IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - -x
                             :
In re                        : Chapter 11
                             :
VF BRANDS, INC., et al.,     : Case No. 01-00285 (MFW)
                             :
            Debtors.         : Jointly Administered
                             :
- - - - - - - - - - - - - -x
```

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER UNDER 11 U.S.C. § 1129(a) AND (b) CONFIRMING SECOND AMENDED JOINT PLAN OF DISTRIBUTION OF VF BRANDS, INC. AND CERTAIN AFFILIATES

WHEREAS, on June 12, 2001, VF Brands, Inc., Vlasic Foods International Inc.("VFI") and several of their affiliates, debtors and debtors-in-possession (collectively, the "Debtors"),[1] filed their Joint Plan of Distribution of VF Brands, Inc. and Certain Affiliates, dated June 12, 2001; and

WHEREAS, on August 20, 2001, the Debtors filed their First Amended Joint Plan of Distribution of VF Brands, Inc. and Certain Affiliates dated August 20, 2001, together with a related disclosure statement; and

---

[1]    All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan (as defined below).

WHEREAS, on September 24, 2001, the
Debtors filed their Second Amended Joint Plan of Distri-
bution of VF Brands, Inc. and Certain Affiliates, dated
September 24, 2001 (as modified, supplemented and
amended, the "Plan"); and

WHEREAS, the Debtors also filed on such
date their Disclosure Statement with Respect to Second
Amended Joint Plan of Distribution of VF Brands, Inc. and
Certain Affiliates, dated September 24, 2001 (the "Dis-
closure Statement"); and

WHEREAS, on September 25, 2001, the Court
entered orders which, among other things, (i) established
solicitation, voting, notice of the hearing on confirma-
tion of the Plan (the "Confirmation Hearing Notice"), and
tabulation procedures and deadlines (the "Solicitation
Procedures Order"); and (ii) approved the Disclosure
Statement pursuant to section 1125 of the Bankruptcy Code
(the "Disclosure Statement Approval Order"); and

WHEREAS, the Confirmation Hearing Notice,
the Disclosure Statement, the Plan, the Disclosure State-
ment Approval Order and the appropriate Ballots (collec-
tively, the "Solicitation Package") were transmitted to
all holders of Claims and Interests and other parties in

2

interest in accordance with Bankruptcy Rule 3017(d) and the Solicitation Procedures Order, as set forth in the affidavit of Stephenie Kjontvedt, an employee of Robert L. Berger & Associates LLC, the Debtors' voting agent, sworn to on October 29, 2001 (the "Solicitation Affidavit"); and

WHEREAS, the Confirmation Hearing Notice was published on September 28, 2001 in the national edition of the New York Times, as set forth in the affidavit of Jo Swiderski, sworn to on October 16, 2001 (the "Publication Affidavit"); and

WHEREAS, the VFI LLC Members' Agreement, which identifies the LLC Manager and sets forth the responsibilities and powers of the LLC Manager and the provisions under which VFI LLC will be formed and governed, was filed with the Court on or about October 15, 2001; and

WHEREAS, on October 30, 2001, the Debtors filed an affidavit of Stephenie Kjontvedt of Robert L. Berger & Associates LLC, the Debtors' voting agent, sworn to October 29, 2001 (the "Tabulation Affidavit"), certifying the results of the ballot and master ballot tabulation for the classes of claims voting to accept or reject the Plan; and

3

WHEREAS, pursuant to section 1128(a) of the Bankruptcy Code, the Court held a hearing commencing on October 31, 2001 (the "Confirmation Hearing") to consider confirmation of the Plan and the objections thereto (collectively, the "Objections").

NOW, THEREFORE, based upon the Court's review and consideration of (i) the affidavits and submissions previously filed with the Court, including the Solicitation Affidavit, the Tabulation Affidavit, the Publication Affidavit (as hereinafter defined); (ii) the record of the Confirmation Hearing (including all of the evidence proffered or adduced at such hearing, the pleadings, briefs, memoranda and other submissions filed in connection therewith, and the arguments of counsel made at such hearing); and (iii) the entire record of these Chapter 11 Cases; and after due deliberation thereon, and good cause appearing therefor, the Court makes the following findings of fact and conclusions of law[2]:

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

4

1. <u>Exclusive Jurisdiction; Venue; Core</u>
<u>Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. This
Court has jurisdiction over the Chapter 11 Cases pursuant
to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant
to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan
is a core proceeding under 28 U.S.C. § 157(b)(2), and
this Court has exclusive jurisdiction to determine
whether the Plan complies with the applicable provisions
of the Bankruptcy Code and should be confirmed.

2. <u>Judicial Notice</u>. Judicial notice is
hereby taken of the docket of the Chapter 11 Cases main-
tained by the Clerk of the Court and/or its duly-ap-
pointed agent, including, without limitation, all plead-
ings and other documents filed, all orders entered, and
the transcripts of, and all evidence and arguments made,
proffered, or adduced at, the hearings held before the
Court during the pendency of the Chapter 11 Cases.

3. <u>Transmittal and Mailing of Materials;</u>
<u>Notice</u>. Due, adequate, and sufficient notice of the
Disclosure Statement, the Plan, and the Confirmation
Hearing, along with all deadlines for voting on or filing
objections to the Plan, has been given to all known
holders of Claims and/or Interests in accordance with the

Bankruptcy Rules and the procedures set forth in the Solicitation Procedures Order and further orders of the Court. The Disclosure Statement, Plan, Ballots, and Confirmation Hearing Notice were transmitted and served in substantial compliance with the Bankruptcy Rules, the Solicitation Procedures Order, and any other applicable orders of the Court, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other bar dates and hearings described in the Solicitation Procedures Order and any other applicable orders of the Court was given in compliance with the Bankruptcy Rules, the Solicitation Procedures Order, and other applicable orders of the Court, and no other or further notice is or shall be required.

4. Distribution. All procedures used to distribute the solicitation materials to the applicable holders of Claims and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and any other applicable rules, laws, and regulations.

5. Impaired Classes That Have Voted to Accept

the Plan. As evidenced by the Tabulation Affidavit, which certified the results of the voting on the Plan, as well as any vote(s) authorized to be changed at the Confirmation Hearing, all voting Classes (i.e., Classes 2, 4 and 5) have accepted or are deemed to have accepted the Plan pursuant to the Solicitation Procedures Order and the requirements of sections 1124 and 1126 of the Bankruptcy Code. Thus, at least one impaired class of Claims has voted to accept the Plan, determined without including any acceptance of the Plan by an insider.

6. Classes Deemed to Have Accepted the Plan. Class 1 is not impaired and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

7. Classes Deemed to Have Rejected the Plan. Classes 3, 6 and 7 will receive no distribution under the Plan and are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

8. Burden of Proof. The Debtors, as proponents of the Plan, have met their burden of proving, by a preponderance of the evidence, the elements of sections 1129(a) and (b) of the Bankruptcy Code. The Court also finds that the Debtors have satisfied the

7

elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and convincing standard of proof.

9. Modifications to Plan. The modifications to the Plan set forth on the record of the Confirmation Hearing, made by this Confirmation Order, and included in the form of Plan, do not materially and adversely affect or change the treatment of any creditor who has not accepted in writing such modifications. Accordingly, pursuant to Fed. R. Bankr. P. 3019, these modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor resolicitation of acceptances or rejections under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Disclosure of the modifications on the record of the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of the Chapter 11 Cases. Accordingly, pursuant to section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019, all holders of Claims and Interests that have accepted or are conclusively deemed to have accepted the Plan are deemed to have accepted such modifications to the Plan.

10. Plan Compliance with Bankruptcy Code (11

8

U.S.C. § 1129(a)(1). The Plan complies with the applica-
ble provisions of the Bankruptcy Code and the Bankruptcy
Rules, thereby satisfying 11 U.S.C. § 1129(a)(1).

           11.    <u>Proper Classification (11 U.S.C. §§
1122, 1123(a)(1))</u>. The Plan designates seven (7) Classes
of Claims and Interests. The Claims and Interests placed
in each Class are substantially similar to other Claims
or Interests, as the case may be, in each such Class, and
such classification is therefore consistent with section
1122 of the Bankruptcy Code. Equity Interests are placed
in Class 7, and are classified separately from all Claims
against the Debtors, which are placed in Classes 1
through 6. Secured Claims (Class 2) are separately
classified from unsecured Claims (Classes 1, 3, 4, 5, and
6) and each secured Claim is given a separate subclass
within Class 2. Unsecured Claims are first subdivided
into priority Claims (Class 1) and non-priority Claims
(Classes 3, 4, 5 and 6). Non-priority unsecured Claims
are then divided further into Intercompany Claims (Class
3), Convenience Claims (Class 4), General Unsecured
Claims (Class 5), and Subordinated Claims (Class 6). In
sum, the Plan's classification scheme recognizes the
differing legal and equitable rights of creditors versus

Interest holders, secured versus unsecured Claims, and priority versus non-priority Claims. Accordingly, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

12. Specified Treatment of Unimpaired Classes 11 U.S.C. § 1123(a)(2). Article III.C.1 of the Plan specifies that Class 1 is not impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

13. Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3). Article III.C of the Plan specifies the treatment of the impaired Classes of Claims (Classes 2 through 6) and Interests (Class 7), thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

14. No Discrimination (11 U.S.C. §1123(a)(4)). The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to other treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

15. Implementation of the Plan (11 U.S.C. § 1123(a)(5)). Article IV of the Plan provides adequate and proper means for implementation of the Plan, thereby

10

satisfying 1123(a)(5) of the Bankruptcy Code. Among
other things, Article IV provides for (i) the dissolution
of the Debtors' and any affiliates of the Debtors' corpo-
rate existence, (ii) the cancellation of the Senior
Subordinated Notes and related agreements, Old Common
Stock, Old Warrant Interests, and other Interests, (iii)
the vesting of the Debtors' assets with VFI LLC to be
administered by the LLC Manager, (iv) the substantive
consolidation of the Debtors' Estates, and (v) the issu-
ance of the Warrants and the securities purchasable upon
the exercise of the Warrants. Other articles of the Plan
set forth means for implementation of the Plan as well.
For example, Article V includes provisions regarding
distributions under the Plan, Article VI provides the
procedures for resolving disputed, contingent, and unliq-
uidated Claims, Article VII provides for the treatment of
executory contracts and unexpired leases, and Article XI
provides for the continuing jurisdiction over matters
arising out of or related to these Chapter 11 Cases and
the Plan. Moreover, the Debtors will have sufficient
cash to make all payments required to be made on the
Effective Date pursuant to the terms of the Plan.

      16.    <u>Nonvoting Equity Securities (11 U.S.C.</u>

§ 1123(a)(6). Pursuant to Article IV.A of the Plan, the Debtors and any affiliates of the Debtors are to be dissolved as soon as reasonably practicable after the Effective Date of the Plan. The Debtors will thus cease to exist soon after the Effective Date of the Plan. The VFI LLC Members' Agreement provides that no non-voting securities shall be issued. Accordingly, section 1123(a)(6) of the Bankruptcy Code is satisfied.

17. Selection of Officers and Directors (11 U.S.C. §1123(a)(7)). The provisions of the Plan regarding the manner of selection of the LLC Manager are consistent with the interests of creditors and Interest holders and with public policy, thereby satisfying 1123(a)(7) of the Bankruptcy Code. Specifically, Article V.A of the Plan provides that the initial LLC Manager will be selected by the Creditors' Committee and thereafter by the Managing Board, in accordance with the terms of such Article. The Creditors' Committee has designated Mr. Ben S. Branch to serve as the initial LLC Manager. As of the Effective Date, the Debtors will execute the VFI LLC Members' Agreement appointing the LLC Manager and setting forth the responsibilities and powers of the LLC Manager. From and after the Effective Date, the LLC

12

Manager will serve as the sole individual authorized to
execute, deliver, file, or record any document or take
any other action necessary or desirable to implement the
terms of the Plan.  The Court appoints Harold D. Jones to
serve as the third member of the Board of the VFI LLC,
and he shall have a responsibility to act as a fiduciary
to all holders of LLC membership interests; moreover, to
the extent not inconsistent with his fiduciary duties to
all holders of membership interests, he shall serve as a
spokesman for those holders of LLC membership interests
who do not have a subordination agreement with the Bank
Group.

      18.    <u>Impairment of Classes (11 U.S.C.</u>
<u>§ 1123(b)(1))</u>.  In accordance with section 1123(b)(1) of
the Bankruptcy Code, Article III of the Plan impairs or
leaves unimpaired, as the case may be, each class of
Claims and Interests under the Plan.

      19.    <u>Treatment of Executory Contracts</u>
<u>and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>.  The Plan
constitutes a motion by the Debtors to reject all execu-
tory contracts and unexpired leases in effect on the
Confirmation Date, except those contracts and leases, if
any, identified as executory contracts to be assumed by

the Debtors under the Plan. The Debtors' decision re-
garding the assumption or rejection of the executory
contracts is based on and is within the sound business
judgment of the Debtors, and is in the best interests of
the Debtors, their Estates, and their creditors and
Interest holders. In accordance with the Plan, any Claim
resulting from the rejection of an executory contract or
unexpired lease which is not already the subject of a
timely filed proof of claim must be filed with the Clerk
of the Bankruptcy Court and served upon VFI LLC within
forty-five days after the date of entry of the Confirma-
tion Order. Any Claim not filed by the deadline will be
deemed waived and forever barred. Accordingly, the Plan
complies with section 1123(b)(2) of the Bankruptcy Code.

20. Retention, Enforcement, and
Settlement of Claims Held by the Debtors (11 U.S.C. §
1123(b)(3). Article IV.E of the Plan provides that VFI
LLC will be assigned all Causes of Action, and, pursuant
to section 1123(b)(3) of the Bankruptcy Code, that the
LLC Manager will be authorized to enforce, prosecute,
settle or compromise, subject to the provisions of Arti-

14

cle VI.C of the Plan, all Causes of Action. VFI LLC may pursue such assigned Causes of Action, as appropriate, in accordance with the terms of the Plan. Accordingly, the Plan complies with section 1123(b)(3) of the Bankruptcy Code.

21. Rights of Holders of Claims (11 U.S.C. § 1123(b)(5)). The Plan does not propose to modify the rights of holders of any Claims. Accordingly, section 1123(b)(5) of the Bankruptcy Code is inapplicable.

22. Other Provisions Not Inconsistent with Title 11 (U.S.C. § 1123(b)(6). In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code.

23. Cure of Defaults (11 U.S.C. § 1123(d)). Any monetary amounts by which any executory contract and unexpired lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor party to the contract or lease or its assignee, by Cure. The amount necessary to Cure shall be determined in accordance with the underlying agreement and applicable nonbankruptcy

15

law. Accordingly, section 1123(d) of the Bankruptcy Code is satisfied.

24. <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

25. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. This Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based upon the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of liquidating the Debtors' assets and distributing the proceeds thereof to the Debtors' creditors pursuant to the Plan. The Plan is based on extensive arm's-length negotiations among the Debtors, the Creditors' Committee, and other parties-in-interest leading to the Plan's formulation, which itself provides independent evidence of the good faith of the Debtors in proposing the Plan.

16

26.     Payment for Services or Costs and

Expenses (11 U.S.C. § 1129(a)(4)). To the extent not

inconsistent with the Reserve Order, any payments made or

to be made by the Debtors or VFI LLC for services or for

costs and expenses accruing prior to confirmation in or

in connection with the Chapter 11 Cases, or in connection

with the Plan and incident to the Chapter 11 Cases, has

been approved by, or is subject to the approval of, the

Court as reasonable, thereby satisfying section·

1129(a)(4) of the Bankruptcy Code. Specifically, (i) all

fees and expenses incurred by Professionals will be

subject to the Court's final approval following the

filing of final fee applications under section 330 of the

Bankruptcy Code and (ii) in the event of a dispute, the

reasonable post-petition fees and expenses of the Inden-

ture Trustee, including successors thereto, including

reasonable attorney's fees and expenses of the Indenture

Trustee will be subject to the Court's approval.

27.     Identification of Directors, Officers,

and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have

complied with section 1129(a)(5) of the Bankruptcy Code

by disclosing at or prior to the Confirmation Hearing as

required by the Plan (i) the identity and affiliations of

17

any individual proposed to serve, after confirmation of the Plan, as the LLC Manager or as a member of the Managing Board; and (ii) the identity and nature of compensation of any insider who will be employed or retained by the Debtors or VFI LLC after confirmation of the Plan. The appointment to such position of such individual(s) is consistent with the interests of the creditors and Interest holders and with public policy.

28. <u>No Rate Changes (11 U.S.C.§ 1129(a)(6))</u>. No governmental regulatory commission has jurisdiction over the Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

29. <u>Best Interest of Creditors Test (11 11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Specifically:

> a. The liquidation analysis contained in the Disclosure Statement and other evidence regarding the subject thereof that has been proffered or adduced at or prior to the Confirmation Hearing have not been controverted by other evidence. The methodology used and assumptions made in connection with the liquidation analysis, as supplemented by other evidence at the Confirmation Hearing, are reasonable.

> b. Each holder of a Claim or holder of an Interest in each impaired Class either has accepted the Plan or will

18

receive or retain under the Plan on account of such Claim or Interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. No Class has made an election under section 1111(b)(2) of the Bankruptcy Code.

30. <u>Acceptance by Certain Classes (11</u>

<u>U.S.C. § 1129(a)(8)</u>. Except for the Classes set forth in paragraph 7 above, each Class of Claims has accepted the Plan, or is not impaired under the Plan and therefore is conclusively presumed to have accepted the Plan without the need for solicitation of acceptances or rejections with respect to such Class. Because not all impaired Classes of Claims and Interests have accepted the Plan or are deemed to have accepted the Plan, the requirements of section 1129(a)(8) have not been met, thus requiring application of section 1129(b) of the Bankruptcy Code.

31. <u>Treatment of Administrative, Other</u>

<u>Priority Claims and Priority Tax Claims (11 U.S.C. §</u>

<u>1129(a)(9))</u>. The treatment of Administrative Claims under Article II.A of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code, the treatment of Other Priority Claims under Article III.C.1

of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under Article II.C of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

32. Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). At least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider of the Debtors holding a Claim in such Class, thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

33. Feasibility (11 U.S.C. § 1129(a)(11)). The Plan explicitly provides for the winding-up of the Debtors, and any of their affiliates, by VFI LLC and the distribution of Cash and LLC Membership Interests to holders of Allowed Claims in accordance with the terms of the Plan. Other than Causes of Action, the majority of the Debtors' assets already have been reduced to cash, and the Plan provides for the creation of various reserves that will enable VFI LLC to make distributions, resolve claims and implement other aspects of the Plan without the need for financial reorganization, thus,

satisfying section 1129(a)(11) of the Bankruptcy Code.

34.    Payment of Fees (11 U.S.C. §
1129(a)(12). All fees payable under 28 U.S.C. § 1930
have been paid on or will be paid before the Effective
Date of the Plan pursuant to Article XIII.C of the Plan,
thereby satisfying section 1129(a)(12) of the Bankruptcy
Code.

35.    Continuation of Retiree Benefits (11
U.S.C. § 1129(a)(13)). Section 1129(a)(13) of the
Bankruptcy Code requires the continuation of retiree
benefits at levels established pursuant to section 1114
of the Bankruptcy Code for the duration of the period
that the debtor has obligated itself to provide such
benefits. Because the Debtors will comply with any
obligations imposed by this Court with respect to retiree
benefits under section 1114 of the Bankruptcy Code, the
Plan satisfies section 1129(a)(13) of the Bankruptcy
Code.

36.    Identification of Plan Proponent
(Fed. R. Bankr. P. 3016(a)). The Plan satisfies Bank-
ruptcy Rule 3016(a) by identifying the date of the Plan
and the proponents of the Plan.

37.    Fair and Equitable; No Unfair

Discrimination (11 U.S.C. § 1129(b)). Class 4 Convenience Claims and Class 5 General Unsecured Claims are impaired Classes of Claims under the Plan. Pursuant to section 1129(b) of the Bankruptcy Code, the Court finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to Class 4 Convenience Claims and Class 5 General Unsecured Claims. Additionally, there is no Claim or Interest that is junior to the Claims of Class 4 Convenience Claims and Class 5 General Unsecured Claims that has received or is retaining any property under the Plan on account of a junior Claim or Interest, and no Class of Claims senior to Class 4 Convenience Claims or Class 5 General Unsecured Claims is receiving more than full payment on account of the Claims in such Class. Alternatively, the Court finds that Class 4 and Class 5 are deemed to have consented to the treatment of their Class 4 Convenience Claims and Class 5 General Unsecured Claims under the Plan. In addition, Class 2 Secured Claims have voted to accept the Plan. Thus, the Plan satisfies section 1129(b) as to each of the Classes described above.

38.    Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the

avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), and no governmental unit has objected to confirmation of the Plan, thereby satisfying section 1129(d) of the Bankruptcy Code.

39. <u>Objections</u>. All Objections to Confirmation filed with the Court have been withdrawn, settled, or overruled.

40. <u>Plan Settlements</u>. There are no proposed settlements set forth in the Plan.

41. <u>Exemption from Securities Laws (11 U.S.C. § 1145(a))</u>. The offer, sale, issuance and distribution of the Warrants by Pinnacle (including the securities purchasable upon exercise of the Warrants) and the LLC Membership Interests when issued as provided in the Plan, shall be exempt from the registration requirements of the Securities Act of 1933, as amended, and any state or local laws requiring registration or licensing, pursuant to section 1145 of the Bankruptcy Code.

The offer, sale, issuance and distribution of the Warrants and LLC Membership Interests is in exchange for Claims against the Debtors, or principally in such exchange and partly for cash or property, within the

meaning of section 1145(a)(1) of the Bankruptcy Code.
The offer and sale of the securities purchasable upon the
exercise of the Warrants will be within the meaning of
the offer and sale contemplated by section 1145(a)(2) of
the Bankruptcy Code.  In addition, under section 1145 of
the Bankruptcy Code, to the extent, if any, that the
Warrants, the securities purchasable upon the exercise of
the Warrants, or LLC Membership Interests constitute
"securities," (i) the offering of such items is exempt
from, and the issuance and distribution of such items
will be exempt from, Section 5 of the Securities Act of
1933 and any state or local law requiring registration
prior to the offering, issuance, distribution, or sale of
securities, and (ii) the Warrants, the securities pur-
chasable upon the exercise of the Warrants, and LLC
Membership Interests will be freely tradable by the
recipients thereof, subject to (A) the provisions of
section 1145(b)(1) of the Bankruptcy Code relating to the
definition of an underwriter in Section 2(11) of the
Securities Act of 1933, as amended, and compliance with
any rules and regulations of the Securities and Exchange
Commission, if any, applicable at the time of any future
transfer of such securities or instruments, (B) the

24

restrictions on the transferability of such securities and instruments set forth therein, and (C) the applicable provisions of the Plan, the Pinnacle Asset Purchase Agreement and the Warrant Agreement. Pursuant to and to the fullest extent permitted by section 1145 of the Bankruptcy Code, the resale of any of the Warrants, the securities purchasable upon the exercise of the Warrants, and LLC Membership Interests shall be exempt from Section 5 of the Securities Act and any state or local law requiring registration or licensing prior to the offering, issuance, distribution or sale of the securities.

42. Good Faith Solicitation; Good Faith Sale of Securities (11 U.S.C. § 1125(e)). The Debtors, their respective officers, directors, employees, agents, accountants, business consultants, representatives, attorneys, and advisors, through their participation in the negotiation and preparation of the Plan and the Disclosure Statement and their efforts to confirm the Plan, have solicited acceptances and rejections of the Plan in good faith. The Debtors, Pinnacle, and their respective officers, directors, employees, agents, accountants, business consultants, representatives, attorneys, and advisors, have participated in the Chapter 11

Cases in compliance with the applicable provisions of the Bankruptcy Code, and each was a "participant" acting in good faith and in compliance with the applicable provisions of the Bankruptcy Code, "in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan" pursuant to section 1125(e) of the Bankruptcy Code, and each is hereby entitled to the full protections of 11 U.S.C. § 1125(e).

43.    Transfers of Property.  The assignment and transfer of the Plan Assets to VFI LLC (i) is a legal, valid, and effective transfer of property, (ii) vests VFI LLC with good title to such property free and clear of all Liens, claims, encumbrances, or other interests, except as expressly provided in the Plan or this Confirmation Order, and (iii) does not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy law.  None of the Debtors shall have any further rights, title or interest in any of the Plan Assets, and none of the Debtors shall be entitled to receive any portion of any amounts recovered on account

of the liquidation of Plan Assets. The transfers of
property by VFI LLC to holders of Claims or Interests
under the Plan are for good consideration and value.

44. Exculpation, Limitation of Liability and
Post-Petition Indemnification. The exculpation, limita-
tion of liability and post-petition indemnification
provisions set forth in Articles XII.B and XII.C of the
Plan are hereby approved.

Section 105(a) of the Bankruptcy Code permits
the approval of the exculpation, limitation of liability,
and the post-petition indemnification provisions set
forth in Article XII of the Plan, especially where, as
here, such provisions are essential to the formulation
and implementation of the Plan as provided in section
1123(a)(5) of the Bankruptcy Code, confer material bene-
fits on the Debtors' estate, and are in the best inter-
ests of the Debtors, VFI LLC, the Debtors' estates and
their creditors.

On the basis of the written record of these
Chapter 11 Cases and the evidence presented at the Con-
firmation Hearing, this Court finds and concludes that it
has jurisdiction to approve the exculpation, limitation
of liability, and the post-petition indemnification

27

provisions set forth in Article XII of the Plan and that such provisions of the Plan are consistent with sections 105, 524, 1123, and 1129 of the Bankruptcy Code.

This Court also finds and concludes that all parties entitled to indemnification by the Debtors under Article XII of the Plan have contributed value to the Debtors' estates in consideration for such right to indemnification and would not have contributed such value absent such right to indemnification.

45.     Liquidation.  The Plan provides for the orderly liquidation and distribution to Claimants of all of the property of the Debtors.

46.     Conditions to Confirmation.  Each of the conditions to confirmation set forth in Article IX.A have been either satisfied or waived.

47.     Jurisdiction.  The Court will retain jurisdiction over all matters arising out of or relating to these Chapter 11 cases and the Plan to the fullest extent provided by law, including those matters set forth in Article XI of the Plan.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

A. <u>Modification</u>. The Plan, as modified by any modification presented to the Court at or prior to the Confirmation Hearing, is the Plan before the Court. The modifications to the Plan as set forth in the Plan do not adversely change the treatment of any Claim of any creditor or the Interest of any Interest holder and, therefore, no further solicitation of votes is required and the Plan as modified is deemed accepted by all creditors and Interest holders who have previously accepted the Plan prior to its modification. No further disclosure regarding the Plan is required.

B. <u>Confirmation</u>. The Plan, a copy of which is attached hereto as Exhibit A, is hereby confirmed, and all acceptances and rejections previously cast for or against the Plan are hereby deemed to constitute acceptances or rejections of the Plan as modified, and all parties in interest are authorized and empowered, or enjoined, as the case may be, to act in accordance with its terms.

29

C. Objections. Each of the Objections to confirmation of the Plan, which has not been withdrawn, waived, or settled, and all reservations of rights included therein, is overruled. To the extent that pleadings or letters filed by individuals or entities constitute Objections to confirmation of the Plan and have not been withdrawn, waived, or settled, they are overruled.

D. Substantive Consolidation. The Plan is deemed to be a motion for entry of an order substantively consolidating the Estates and the Chapter 11 Cases. Such request for substantive consolidation is appropriate in these Chapter 11 Cases and the Debtors' Estates are substantively consolidated for all actions associated with confirmation and consummation of the Plan.

E. Authorization of LLC Manager to Dissolve the Debtors. The LLC Manager is appointed as the authorized signatory to execute on behalf of each Debtor or any affiliate any and all documents, including, but not limited to, all corporate resolutions, statements, notices, tax returns, and certificates of dissolution, necessary to accomplish the dissolution of the Debtors and any affiliates of the Debtors.

F. <u>Representatives of the Debtors</u>. Including, but not limited to the pursuit of Causes of Action, each of the LLC Manager and VFI LLC will be deemed to be the representatives of the Debtors pursuant to section 1124 of the Bankruptcy Code with respect to the settlement and adjustment of any claim or interest belonging to the Debtors or to their Estates.

G. <u>Exemption from Securities Laws</u>. The offer and issuance of the Warrants (and the securities purchasable upon exercise of the Warrants), the sale and distribution of the Warrants (and the securities purchasable upon exercise of the Warrants), and the issuance and distribution of the LLC Membership Interests will be exempt from the registration requirements of the Securities Act of 1933, as amended, and any state or local laws requiring registration or licensing, pursuant to section 1145 of the Bankruptcy Code.

H. <u>Executory Contracts</u>. All executory contracts and unexpired leases in effect on the Confirmation Date, except those executory contracts and unexpired leases, if any, identified as executory contracts or unexpired leases to be assumed by the Debtors under the Plan, are hereby rejected.

31

Any Claim resulting from the rejection of an executory contract or unexpired lease which is not already the subject of a timely filed proof of claim must be filed with the Clerk of the Bankruptcy Court and served upon the counsel for the Debtors within forty-five days after the date of entry of the Confirmation Order. Any Claim not filed by the deadline will be deemed waived and forever barred.

I. <u>No Discharge</u>. Nothing in the Plan or this Confirmation Order, shall be deemed to discharge, enjoin, restrict or otherwise impair any rights that may exist in favor of the holder of any Claim to setoff such Claim against any Causes of Action that may be asserted before, on or after the Effective Date against such holder by any Debtor or successor in interest to a Debtor (including, without limitation, VFI LLC).

J. <u>Subordination Agreements</u>. Contractual subordination rights pursuant to any Indenture or other agreement that may be applicable to Class 2 Secured Claims and Class 5 General Unsecured Claims are not altered or impaired under the Plan.

K. <u>Binding Effect</u>. Effective as of the Confirmation Date, but subject to the occurrence of the

Effective Date, in accordance with section 1141(a) of the Bankruptcy Code, the Plan, its provisions, and this Order shall be binding upon: (i) Debtors, (ii) all present and former holders of Claims and Interests, and (iii) their respective successors and assigns.

L. Vesting of Assets in VFI LLC. The property of the Debtors' Estates shall not revest in the Debtors on or after the Effective Date but shall vest in VFI LLC, to be administered by the LLC Manager until liquidated and distributed according to the terms of the Plan and this Confirmation Order.

M. Approval of Initial LLC Manager. Pursuant to section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the Court approves as consistent with the interests of holder of Claims and Interest holders and with public policy the selection of Mr. Ben S. Branch to serve as the LLC Manager for VFI LLC. Solely to the extent necessary to administer the Plan, the LLC Manager shall be deemed to be the sole authorized signatory of each Debtor and shall be deemed to be the sole officer, director or voting shareholder of the Debtors for any legitimate corporate purpose, including participation in the liquidation of the affiliates of the Debtors and amending any bylaws or

certificates of incorporation.

N. <u>Approval of Initial Managing Board</u>. Pursuant to section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the Court approves as consistent with the interests of holders of Claims and Interest holders and with public policy the selection of Mr. Nicholas Walsh, Mr. William Duncan, and Mr. Harold Jones to serve as the initial members of the Managing Board of VFI LLC.

O. Nothing set forth herein shall prevent the LLC Manager or any Managing Board member from resigning or being terminated and replaced in accordance with the terms of the Plan.

P. <u>Distribution Record Date</u>. The Distribution Record Date, for purposes of making distributions under the Plan on account of Allowed Claims, will be the fifth Business Day before the Effective Date.

Q. <u>Cancellation of Senior Subordinated Notes and Agreements, Old Common Stock, Old Warrants Interests, and other Interests</u>. As of the Effective Date, except as otherwise provided for in the Plan, the Senior Subordinated Notes and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors will be deemed

34

cancelled and of no further force or effect without further action on the part of this Court, or any Person including, but not limited to, governmental agencies.

In addition, as of the Effective Date, each share of Old Common Stock issued and outstanding or held in treasury, shall be cancelled and retired and no consideration will be paid or deliver with respect thereto. Additionally, as of the Effective Date, Old Warrants Interests and other Interests, to the extent not already cancelled, shall be cancelled.

R. <u>Exemption from Stamp Taxes</u>. In accordance with section 1146(c) of the Bankruptcy Code, neither the issuance, transfer, nor exchange of a security or the delivery of an instrument of transfer under the Plan shall be taxed under any law imposing a stamp tax or similar tax. All government officials and agents are directed to forego the assessment and collection of any such tax.

S. <u>Plan Classification Controlling</u>. The classification of Claims and Interests for purposes of payment of the distributions to be made under the Plan is governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned

by the holders of Claims and Interest holders of the
Debtors in connection with voting on the Plan (a) were
set forth thereon solely for purposes of voting on the
acceptance or rejection of the Plan and tabulation of
such votes, (b) do not necessarily represent and in no
event shall be deemed to modify or otherwise affect the
actual classification of such Claims and Interests under
the terms of the Plan for distribution purposes, and (c)
may not be relied upon by any creditor or Interest holder
as actually representing the actual classification of
such Claims and Interests under the terms of the Plan for
distribution purposes.

T.  Payment of Administrative Claims.  The
Administrative Claims Bar Date for the filing of Adminis-
trative Claims, including Professional Fee Claims based
on the expenses of individual members of the Creditors'
Committee, or any other claims under section 503 of the
Bankruptcy Code, shall be the first Business Day that is
at least 90 days after the Effective Date for Profes-
sional Fee Claims, and 45 days after the Effective Date
for all other Administrative Claims.

Holders of asserted Administrative Claims not paid
prior to the Confirmation Date must submit proofs of

Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. The notice of Confirmation to be delivered pursuant to Fed. R. Bankr. P. 3020(c) and 2002(f) will set forth such date and shall constitute notice of the Administrative Claims Bar Date.

U. Payment of Professional Fees. Within 15 days after the Confirmation Date, each Professional shall provide the Debtors, the Committee, and the proposed LLC Manager, with a non-binding estimate of the fees and expenses that such Professional will seek compensation for through the Effective Date. Each professional retained in these Chapter 11 Cases shall serve and file its final fee application no later than the first Business Day that is at least 90 days after the Effective Date of the Plan, unless otherwise extended by the Court. Any objection to a Professional Fee claim filed after the Confirmation Dated shall be served on the LLC Manager, its counsel, and the Professional to whose claim the objection relates no later than 25 days after the last date to file a Professional Fee Claim. The LLC Manager will pay each Professional Fee Claim within ten days after this Court's order granting the application is

entered.

     V.    Payment of Fees Arising Under 28 U.S.C. §
1930(a)(6).  The Debtors or VFI LLC shall pay all fees
arising under 28 U.S.C. § 1930(a)(6) after the Effective
Date and through the date of the entry of a final decree
closing the case from funds otherwise available for
distribution under the Plan.

     W.    Retention of Jurisdiction.  The Court shall
retain jurisdiction in accordance with the terms of
Article XI of the Plan, the other provisions of this
Confirmation Order, and sections 1142 and 105 of the
Bankruptcy Code.  Until these Chapter 11 Cases are
closed, any party in interest may commence a proceeding
in the Court in respect of any matter as to which juris-
diction has been retained.

     X.    Post-Confirmation Modifications to Plan.
The Debtors, with the consent of the Creditors' Commit-
tee, may modify the Plan after the Confirmation Date to
the fullest extent permitted under section 1127 of the
Bankruptcy Code and Bankruptcy Rule 3019, including but
not limited to modifications necessary to obtain any no-
action letters.

Y.   Post-Confirmation Withdrawal of Plan.   At
any time prior to the Effective Date, the Debtors, with
the consent of the Creditors' Committee', may withdraw
the Plan.

Z.   Reference to Plan.   Any document related to
the Plan that refers to a chapter 11 plan of the Debtors
other than the Plan confirmed by this Confirmation Order
shall be, and it hereby is, deemed to be modified such
that such reference to a chapter 11 plan of the Debtors
in such document shall mean the Plan confirmed by this
Confirmation Order, if appropriate.

AA.   Inconsistency.   In the event of an incon-
sistency between the Plan and any other agreement, in-
strument, or document intended to implement the provi-
sions of the Plan, the provisions of the Plan shall
govern unless otherwise expressly provided for in such
agreements, instruments, or documents.   In the event of
any inconsistency between the Plan and any agreement,
instrument, or document intended to implement the Plan
and this Confirmation Order, the provisions of this
Confirmation Order shall govern.   This Confirmation Order
shall supersede any orders of the Court issued prior to
the Effective Date that may be inconsistent herewith.

39

Notwithstanding the foregoing, however, nothing in this Confirmation Order shall modify, amend or derogate in any way the relief granted (a) in that certain stipulation and order dated August 8, 2001 and entered August 14, 2001 granting the motion of Wachovia Bank, N.A. for relief from the automatic stay or, alternatively, for adequate protection, Docket No. 629 or (b) the Sale Order. Furthermore and notwithstanding the foregoing, nothing in the Plan, the Disclosure Statement or this Confirmation Order, or any other agreement, instrument or document entered in connection with the Plan shall affect the terms and conditions of the Pinnacle Asset Purchase Agreement, including, all exhibits and amendments thereto, to the extent any such exhibits or amendments entered after the closing of the Pinnacle Asset Purchase Agreement are approved by Final Order of the Bankruptcy Court.

BB. <u>Notice of Entry of Confirmation Order</u>. In accordance with Bankruptcy Rules 2002 and 3020(c), on or before the Effective Date, the Debtors (or their agents) shall give notice of the entry of this Confirmation Order, in substantially the form of Exhibit B annexed hereto (the "Notice of Confirmation"), by United States

first class mail postage prepaid, by hand, or by over-
night courier service to: (i) the United States Trustee;
(ii) counsel for the Creditors' Committee; (iii) the
Securities and Exchange Commission; (iv) the District
Director of Internal Revenue (Wilmington); (v) the United
States Attorney for the District of Delaware; (vi) each
department, agency, or instrumentality of the United
States that asserts a non-tax claim against the Debtors;
(vii) the entities who objected to the confirmation of
the Plan; (viii) entities who requested notices under
Bankruptcy Rule 2002; (ix) the Indenture Trustee; (x) all
creditors who have filed proofs of Claim in these Chapter
11 Cases or who are scheduled in the Debtors' Schedules,
or any amendment or modification thereto; and (xi) all
holders of Interests as of September 20, 2001; provided
however, that the giving of notice of the entry of this
Confirmation Order to the holders of Claims (including
beneficial holders) based on the Debt Securities of the
Debtors_shall be sufficient if the Notice of Confirmation
is sent to holders of record, as of September 20, 2001,
of such Debt Securities and to the Indenture Trustee.

CC. Returned Mail. Notwithstanding anything
to the contrary contained herein, no notice or service of

41

any kind will be required to be mailed or made upon any person to whom the Debtors mailed a notice of the last date for filing proofs of claim in these Chapter 11 Cases, the notice of the Disclosure Statement Hearing, or the various solicitation packages containing, among other things, notice of the Confirmation Hearing, but received any of such notices returned marked "undeliverable as addressed," "moved - left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such person of that person's new address.

DD. <u>Publication Notice</u>. VFI LLC shall publish the Notice of Confirmation within fifteen business days after the Confirmation Date once in the national edition of the <u>New York Times</u>.

EE. <u>Authorization to Close</u>. The Court hereby authorizes the Debtors to consummate the Plan immediately after entry of this Confirmation Order subject to the occurrence or waiver of the conditions precedent to the Plan's consummation set forth in Article IX.B of the Plan.

FF. <u>Sufficiency of Notice of Confirmation</u>. Mailing and publication of the Notice of Confirmation in

the time and manner set forth in the preceding paragraphs
are adequate and satisfy the requirements of Bankruptcy
Rules 2002 and 3020(c), and no further notice is neces-
sary.

               GG.   Waiver of Fed. R. Bankr. P. 3020(e).
Pursuant to Fed. R. Bankr. P. 3020(e), the ten-day stay
of this Confirmation Order imposed thereby is waived.
The Debtors are authorized to consummate the Plan and the
transactions contemplated thereby immediately upon, or
concurrently with, satisfaction of the conditions set
forth in the Plan.

               HH.   Efficacy of Plan.  The failure to specifi-
cally include any particular provision of the Plan in
this Confirmation Order shall not diminish or impair the
efficacy of such provision, it being understood the
intent of this Court that the Plan be confirmed and
approved in its entirety.

               II.   Nonseverability of Confirmation Order.
The provisions of the Confirmation Order are nonseverable
and mutually dependent.

JJ. The Reserve Order. On October 23, 2001 the Bankruptcy Court signed the Stipulation and Order With Respect To Use Of, and Limited Release of Lien With Respect to, collateral (the "Reserve Order"), a copy of which is attached hereto as Exhibit C and incorporated herein. The Plan is hereby deemed amended by the terms of the Reserve Order.

KK. Notwithstanding anything contained in the Plan or the form of VFI LLC Members' Agreement presented to this Court at the final hearing on confirmation of the Plan, no change shall be made to the VFI LLC Members' Agreement from such form that could affect the funding, investment or distribution of the Disputed Claim Distribution Reserve, the interpretation of the Plan or such Agreement, or the standards of care or fiduciary duties applicable to the LLC Manager and Managing Board, or affect in any material respect the amount or allocation of any distributions under such Agreement, without, in each case, the approval of this Court on notice to all affected parties-in-interest.

LL. Nothing herein or in the Plan shall be construed to suggest that any settlement which includes a Subordination Rights Waiver (as defined in the Plan) is

44

either appropriate or inappropriate.

      MM. The terms of the VFI LLC Members' Agreement are hereby incorporated herein by reference, provided, however, that to the extent that the VFI LLC Members' Agreement conflicts with the Plan and this Confirmation Order, the Plan and this Confirmation Order shall control.

Dated:      Wilmington, Delaware
               November 16, 2001

               Honorable Mary F. Walrath
               United States Bankruptcy Judge

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :
In re                                   :
                                        :        Chapter 11
VF BRANDS, INC., et al.                 :        Case No. 01-00285 (MFW)
                                        :        (Jointly Administered)
                    Debtors.            :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

## SECOND AMENDED JOINT PLAN OF DISTRIBUTION OF VF BRANDS, INC. AND CERTAIN AFFILIATES

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Sally McDonald Henry
Frederick D. Morris
4 Times Square
New York, New York 10036-6552
(212) 735-3000

-and-

Anthony W. Clark (I.D. No. 2051)
Robert A. Weber (I.D. No. 4013)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Attorneys for VF Brands, Inc., et al.,
  Debtors and Debtors-in-Possession

Dated:   Wilmington, Delaware
            November __, 2001

**TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................. PLAN-1

**ARTICLE I.**
**DEFINITIONS, RULES OF INTERPRETATION,**
**AND COMPUTATION OF TIME** ................................................................. PLAN-1
  A.  Scope of Definitions; Rules of Construction .......................................... PLAN-1
  B.  Definitions ............................................................................. PLAN-1
  C.  Rules of Interpretation ............................................................... PLAN-7
      1.  *General* ......................................................................... PLAN-7
      2.  *"Including"* ..................................................................... PLAN-7
      3.  *"On"* ............................................................................ PLAN-7
  D.  Computation of Time ................................................................. PLAN-8

**ARTICLE II.**
**TREATMENT OF UNCLASSIFIED CLAIMS** .................................................. PLAN-8
  A.  Administrative Claims ................................................................ PLAN-8
  B.  Professional Fee Claims .............................................................. PLAN-8
  C.  Priority Tax Claims .................................................................. PLAN-8

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...................... PLAN-9
  A.  Introduction ........................................................................... PLAN-9
  B.  Summary of Classes ................................................................... PLAN-9
  C.  Treatment of Classes ................................................................. PLAN-9
      1.  *Class 1 - Other Priority Claims* ................................................ PLAN-9
      2.  *Classes 2A, 2B, 2C, etc. - Secured Claims* ..................................... PLAN-9
      3.  *Class 3 - Intercompany Claims* ................................................. PLAN-10
      4.  *Class 4 - Convenience Claims* .................................................. PLAN-10
      5.  *Class 5 - General Unsecured Claims* ............................................ PLAN-10
      6.  *Class 6 - Subordinated Claims* .................................................. PLAN-10
      7.  *Class 7 - Interests* ............................................................. PLAN-11
  D.  Allowed Claims ........................................................................ PLAN-11
  E.  Postpetition Interest .................................................................. PLAN-11
  F.  Alternative Treatment ................................................................ PLAN-11

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN** .......................................... PLAN-11
  A.  Dissolution of Corporate Existence .................................................. PLAN-11
  B.  Corporate Action ...................................................................... PLAN-12
      1.  *Cancellation Of Senior Subordinated Notes and Agreements* .................. PLAN-12
      2.  *Cancellation Of Stock, Old Warrants Interests, and other Interests* .......... PLAN-12
  C.  Directors and Officers ................................................................ PLAN-13
  D.  No Revesting of Assets ................................................................ PLAN-13
  E.  Preservation of Rights of Action ..................................................... PLAN-13
  F.  Exemption from Certain Transfer Taxes ............................................. PLAN-13
  G.  Substantive Consolidation ............................................................ PLAN-13
  H.  Warrants ............................................................................... PLAN-14

**ARTICLE V.**
**PROVISIONS GOVERNING DISTRIBUTIONS** .............................................. PLAN-14

A.  LLC Manager . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
B.  VFI LLC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-15
   1.  *The Establishment of the VFI LLC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-15
   2.  *Acquisition of Plan Assets and Administrative Obligations* . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-15
   3.  *LLC Membership Interests* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-15
   4.  *Establishment of LLC Membership Interest Registers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-16
   5.  *LLC Membership Interests Granted on Account of Disputed Claims* . . . . . . . . . . . . . . . . . . . . PLAN-16
   6.  *Limitations on Transferability of LLC Membership Interests* . . . . . . . . . . . . . . . . . . . . . . . . PLAN-16
   7.  *Transfer of Causes of Action by Holders* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
   8.  *Funding the VFI LLC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
   9.  *Distribution of Proceeds* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
   10. *Distributions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
   11. *Powers and Duties of the LLC Manager* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
   12. *Authority to Settle Causes of Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-18
   13. *Compensation of the LLC Manager* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-18
   14. *Indemnification and Exculpation of the LLC Manager and Managing Board* . . . . . . . . . . . . . . PLAN-18
   15. *Board of Managers of the VFI LLC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-19
C.  Distributions to Holders of Debt Securities Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-20
   1.  *Distributions to Indenture Trustees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-20
   2.  *Surrender of Securities or Instruments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-20
   3.  *Distribution Record Date* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-20
D.  Means of Cash Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-20
E.  Delivery of Distributions; Undeliverable or Unclaimed Distributions . . . . . . . . . . . . . . . . . . . . . . . PLAN-20
   1.  *Delivery of Distributions in General* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-20
   2.  *Undeliverable and Unclaimed Distributions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-20
F.  Fractional Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-21
G.  Withholding and Reporting Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-21
H.  Setoffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-21

**ARTICLE VI.**
**RESOLVING DISPUTED, CONTINGENT,**
**AND UNLIQUIDATED CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-21
A.  Claims Objection Deadline; Prosecution of Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-21
B.  Distribution Reserve; Estimation of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-21
C.  Claims Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-22
   1.  *Settlement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-22
   2.  *Other Provisions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-22

**ARTICLE VII.**
**TREATMENT OF EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-22
A.  Assumed Contracts and Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-22
B.  Payments Related to Assumption of Contracts and Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-23
C.  Bar to Rejection Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-23

**ARTICLE VIII.**
**ACCEPTANCE OR REJECTION OF THE PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-23
A.  Classes Entitled To Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-23
B.  Acceptance by Impaired Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-23
C.  Elimination of Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-23
D.  Cramdown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-23

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO THE PLAN'S**
**CONFIRMATION AND CONSUMMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-24

    A. Conditions to Confirmation ............................................................... PLAN-24
    B. Conditions to Effective Date ............................................................... PLAN-24
    C. Waiver of Conditions ..................................................................... PLAN-24

**ARTICLE X.**
**MODIFICATION; WITHDRAWAL** ............................................................ PLAN-24

**ARTICLE XI.**
**RETENTION OF JURISDICTION** ............................................................ PLAN-25

**ARTICLE XII.**
**EFFECTS OF CONFIRMATION** ............................................................ PLAN-26
    A. Binding Effect ........................................................................ PLAN-26
    B. Exculpation and Limitation of Liability ..................................................... PLAN-26
    C. Post-Petition Indemnification Obligations ................................................... PLAN-26
    D. Subordination Agreements ................................................................ PLAN-27

**ARTICLE XIII.**
**MISCELLANEOUS PROVISIONS** ........................................................... PLAN-27
    A. Bar Date for Administrative, Professional Fee and Substantial Contribution Claims .................. PLAN-27
    B. Rights of PFC under Pinnacle Asset Purchase Agreement Not Affected ........................... PLAN-27
    C. Payment of Statutory Fees ............................................................... PLAN-27
    D. Severability of Plan Provisions ........................................................... PLAN-27
    E. Successors and Assigns .................................................................. PLAN-27
    F. Term of Injunctions or Stays ............................................................. PLAN-27
    G. Committees ........................................................................... PLAN-28
    H. Plan Supplement ...................................................................... PLAN-28
    I. Notices to Debtors ..................................................................... PLAN-28
    J. Governing Law ........................................................................ PLAN-29

# INTRODUCTION

VF Brands, Inc. and its affiliates Vlasic Foods International Inc., Aligar, Inc., Cargal, Inc., Vlasic Foods Distribution Company, Vlasic Standards, Inc., Vlasic International Brands Inc., and Vlasic International Sales Inc. (collectively, the "Affiliated Debtors") hereby propose this joint plan of distribution (the "Plan"). The Debtors' Disclosure Statement, distributed with this Plan, contains a discussion of the Debtors' history, businesses and properties and a summary of the Plan and certain related matters relating to the Plan's confirmation. The Debtors urge all holders of Claims and Interests to review the Disclosure Statement and Plan in full.

## ARTICLE I.

## DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### A. Scope of Definitions; Rules of Construction

Except as expressly provided or unless the context otherwise requires, capitalized terms not otherwise defined in this Plan shall have the meanings ascribed to them in this Article I. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Where the context requires, any definition applies to the plural as well as the singular number.

### B. Definitions

1.1 "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtors' Estates and operating their businesses, including wages, salaries, or commissions for services rendered after the Petition Date, (b) Professional Fees, (c) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, (d) all Allowed Claims that are entitled to be treated as Administrative Claims by virtue of a Final Order entered under section 546(c)(2)(A) of the Bankruptcy Code, and (e) the reasonable post-petition fees and expenses of the Indenture Trustee, including successors thereto, including reasonable attorney's fees and expenses of such trustee, subject to Bankruptcy Court approval.

1.2 "Administrative Claims Bar Date" means the deadline for filing Administrative Claims, including Professional Fee Claims, Claims based on the expenses of individual members of the Creditors' Committee, or any other claims under section 503 of the Bankruptcy Code, which date shall be the first Business Day that is at least 90 days after the Effective Date for Professional Fee Claims, and 45 days after the Effective Date for all other Administrative Claims, or any other later date so denominated in the Confirmation Order.

1.3 "Aligar" means Aligar, Inc., a Delaware corporation, debtor and debtor-in-possession in Chapter 11 Case No. 01-00287 (MFW) pending in the Bankruptcy Court.

1.4 "Allowed" means, with respect to a Claim, a Claim or any portion thereof that (a) appears on any of the Debtors' Schedules and is not identified therein as contingent, unliquidated, or disputed; (b) is specifically allowed in this Plan; (c) is the subject of a timely-filed proof of claim (or timely-filed request for payment, with respect to an Administrative Claim for which such a request is necessary under this Plan, as to which (i) no timely objection has been filed, or (ii) any objection has been settled, waived by payment, or withdrawn; or (d) has been allowed by a Final Order of the Bankruptcy Court. An Allowed Claim (A) includes a Disputed Claim to the extent such Disputed Claim becomes allowed after the Effective Date and (B) shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code. Unless otherwise specified herein, in section 506(b) of the Bankruptcy Code or by order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of distributions under the Plan, include (x) for prepetition Claims, interest on such Claim or Claims accruing from or after the Petition Date, (y) punitive or exemplary damages or (z) any fine, penalty or forfeiture.

1.5 "Ballot" means a ballot in the form distributed with the Disclosure Statement to holders of Claims entitled to vote on the Plan.

1.6 "Ballot Summary" means the Debtors' report, to be filed with the Bankruptcy Court before the Confirmation Hearing, summarizing the votes of holders of Claims and Interests to accept or reject the Plan.

1.7 "Bank Group" shall have the meaning set forth in Section III.C.3.i of the Disclosure Statement, and includes the lenders, the Administrative Agent and the Collateral Agent, as set forth in such Section, as well as each Indemnitee, as set forth in the amended proof of claim of Morgan Guaranty Trust Company of New York, as Administrative Agent, dated July 25, 2001.

1.8 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.9 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or any other court with jurisdiction over the Chapter 11 Cases.

1.10 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended.

1.11 "Bar Date" means any date designated by the Bankruptcy Court as the last date for filing proofs of Claim or Interest in the Chapter 11 Case.

1.12 "Bondholder Representatives" has the meaning ascribed to such term in Article V.B.15 of the Plan.

1.13 "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

1.14 "Cargal" means Cargal, Inc., a Delaware Corporation, debtor and debtor-in-possession in Chapter 11 Case No. 01-00288 (MFW) pending in the Bankruptcy Court.

1.15 "Cash" means legal tender of the United States of America.

1.16 "Causes of Action" means any and all claims, rights and causes of action that have been or could have been brought by or on behalf of the Debtors arising before, on or after the Petition Date, known or unknown, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to any and all claims, rights and causes of action the Debtors or the Estates may have against any Person arising under chapter 5 of the Bankruptcy Code, or any similar provision of state law or any other law, rule, regulation, decree, order, statute or otherwise, including but not limited to fraudulent transfer and preference actions.

1.17 "Chapter 11 Cases" means the jointly administered Chapter 11 cases of VF Brands and its Affiliated Debtors.

1.18 "Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor.

1.19 "Claims Objection Deadline" means the deadline for filing objections to Claims filed on or before, and not amended after, the Bar Date. The Claims Objection Deadline shall be the first Business Day that is at least 180 days after the Effective Date, or any other later date so denominated in the Confirmation Order, or by subsequent order of the Bankruptcy Court.

1.20 "Class" means one of the classes of Claims or Interests listed in Article III below.

1.21 "Collateral" means any property or interest in property of a Debtor's Estate that is subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code.

1.22 "Confirmation" means the Bankruptcy Court's confirmation of the Plan.

1.23 "Confirmation Date" means the date of entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.24 "Confirmation Hearing" means the Bankruptcy Court's hearing to consider confirmation of the Plan, as it may be adjourned or continued from time to time.

1.25 "Confirmation Order" means the Bankruptcy Court's order confirming the Plan under section 1129 of the Bankruptcy Code.

1.26 "Convenience Cap Amount" means the maximum amount that an Allowed Claim may be and still be treated as a Convenience Claim, which amount shall be $10,000.

1.27 "Convenience Claim" means a Claim that would otherwise be classified as a Class 5 General Unsecured Claim that is asserted in the amount of the Convenience Cap Amount or less.

1.28 "Creditors' Committee" means the committee of unsecured creditors appointed under section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases, as such committee may be reconstituted from time to time.

1.29 "Cure" means the payment of Cash by a Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtor and permit the Debtor to assume that contract or lease under section 365(a) of the Bankruptcy Code.

1.30 "Debtor" means each of VF Brands, VFI, Aligar, Cargal, VF Distribution, VF Standards, VIB and VIS as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code, and "Debtors" means all of them collectively, and when the context so requires, as post-confirmation and/or Effective Date entities.

1.31 "Debt Securities" means any and all of the 10 1/4% Senior Subordinated Notes.

1.32 "Debt Securities Claim" means the Claim of a holder of a Debt Securities, arising thereunder.

1.33 "Disallowed Claim" means a Claim, or any portion thereof, that (a) does not appear on any of the Debtors' Schedules, or is identified therein as contingent, unliquidated, or disputed or is Scheduled at zero, and in either case whose holder has failed to file a timely proof of claim; or (b) has been disallowed by Final Order of the Bankruptcy Court.

1.34 "Disclosure Statement" means the written disclosure statement approved by the Bankruptcy Court that relates to the Plan that the Debtors have distributed to solicit acceptances of their plan.

1.35 "Disputed Claim" means any Claim, or any portion thereof, that is not an Allowed Claim or a Disallowed Claim.

1.36 "Distribution Date" means the date on which the LLC Manager first makes distributions to holders of Allowed Claims as provided in Article V of this Plan as set forth in and subject to the VFI LLC Members' Agreement.

1.37 "Distribution Proceeds" has the meaning ascribed to such term in Article V.B.9 of the Plan.

1.38 "Distribution Record Date" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the date set forth in the Confirmation Order.

1.39 "Distribution Reserve" has the meaning ascribed to such term in Article VI.B.

1.40 "Effective Date" means the first Business Day (i) on which all conditions to the Plan's consummation in Article IX.B hereof have been satisfied or waived and (ii) that is the date on which the Plan is consummated.

1.41 "Entity" has the meaning assigned to such term in section 101(15) of the Bankruptcy Code.

1.42 "Equity Securities" means any capital stock or other ownership interest in any of the Debtors, whether or not transferable, and any option, warrant or right to purchase, sell, or subscribe for an ownership interest or other equity security in any of the Debtors, including the common stock of VFI.

1.43 "Estate" means the estate of any Debtor in the Chapter 11 Cases, and "Estates" means, collectively, the estates of all of the Debtors in the Chapter 11 Cases, in each case as created under section 541 of the Bankruptcy Code.

1.44 "Exchange Act" means the Securities Exchange Act of 1934, as amended.

1.45 "Face Amount" means (a) when used in reference to a Disputed Claim, the full stated amount claimed by the holder thereof in any proof of Claim timely filed with the Bankruptcy Court, and (b) when used in reference to an Allowed Claim, the allowed amount thereof.

1.46 "Final Order" means an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction, that has not been amended, modified, or reversed, and as to which (i) no stay is in effect, (ii) the time to seek rehearing or file a notice of appeal has expired, and (iii) no appeal or request for a stay or other review is pending.

1.47 "General Unsecured Claim" means an unsecured Claim that is not entitled to priority under section 507 of the Bankruptcy Code.

1.48 "Indemnified Person" shall have the meaning ascribed to such term in Article V.A of the Plan.

1.49 "Indenture" means the trust indenture for the 10 1/4% Senior Subordinated Notes.

1.50 "Indenture Trustee" means the Bank of New York or its successor, in either case in its capacity as indenture trustee for the 10 1/4% Senior Subordinated Notes.

1.51 "Instruments" has the meaning ascribed to such term in Article IV.B.1 of the Plan.

1.52 "Intercompany Claim" means any Claim of a Debtor against another Debtor (and excludes Claims of or against non-debtor subsidiaries).

1.53 "Interest" means the legal, equitable, contractual and other rights of any Person with respect to any Equity Securities.

1.54 "I.R.C." means the Internal Revenue Code of 1986, title 26 of the United States Code, as amended from time to time.

1.55 "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.56 "LLC Manager" means the Person appointed by the Creditors' Committee to administer the Plan, and to serve as the manager for the VFI LLC, and to manage any litigation prosecuted by the VFI LLC, or any successor appointed by the Managing Board, who shall be identified in the Plan Supplement, all as set forth in and subject to the VFI LLC Members' Agreement. Additionally, solely to the extent necessary to administer the Plan, the LLC Manager shall be deemed to be the sole authorized signatory of each Debtor and shall be deemed to be the sole officer, director or voting shareholder of the Debtors for any legitimate corporate purpose, including participation in the liquidation of affiliates of the Debtors and amending any bylaws or certificates of incorporation.

1.57 "LLC Manager Reserve" has the meaning ascribed to such term in Article V.B.8 of the Plan.

1.58 "LLC Membership Interests" means the membership interests in the VFI LLC granted to holders of Class 5 General Unsecured Claims as described in Article V.B.3 of the Plan.

1.59 "Managing Board" has the meaning ascribed to such term in Article V.B.15 of the Plan.

PLAN-4

1.60 "Managing Board Reserve" has the meaning ascribed to such term in Article V.B.8 of the Plan.

1.61 "Old . . . Common Stock" means, with respect to the specified Debtor, that Debtor's common stock issued and outstanding immediately before the Petition Date, together with any options, warrants, or rights, contractual or otherwise, to acquire or receive any such stock.

1.62 "Old Warrants" means all incentive stock options, non-qualified stock options, and stock appreciation rights granted under any Debtor-sponsored stock option plans, and any other options, warrants, or rights, contractual or otherwise, if any, to acquire or receive an Interest, authorized as of the Petition Date.

1.63 "Old Warrants Interest" means any Interest arising from or under the Old Warrants.

1.64 "Ordinary Course Professionals' Order" means an order entered by the Bankruptcy Court authorizing the Debtors, or any of them, to retain, employ and pay certain professionals, as specified in the order, in the ordinary course of business, without further order of the Bankruptcy Court.

1.65 "Other Priority Claim" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

1.66 "Periodic Distribution Date" means, as set forth in and subject to the VFI LLC Members' Agreement, each of (a) the Distribution Date, and (b) any date after the Distribution Date upon which the LLC Manager, in its sole discretion, makes distributions to holders of Allowed Claims in accordance the provisions of the Plan.

1.67 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

1.68 "Petition Date" means January 29, 2001, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

1.69 "PFC" means Pinnacle Foods Corporation, f/k/a HMTF Foods Acquisition Corp.

1.70 "Pinnacle" means Pinnacle Foods Holding Corporation, the sole stockholder of PFC.

1.71 "Pinnacle Asset Purchase Agreement" means that certain asset purchase agreement dated as of April 3, 2001 among the Debtors, Vlasic Foods Canada, Inc., and PFC, as amended.

1.72 "Plan" means this plan of distribution, as it may be amended, modified, or supplemented from time to time.

1.73 "Plan Assets" has the meaning ascribed to such term in Article V.B.2 of the Plan.

1.74 "Plan Supplement" means the compilation of documents, including any exhibits to the Plan not included herewith, that the Debtors will file with the Bankruptcy Court either before the Confirmation Hearing, or in the case of the VFI LLC Members' Agreement, filed with the Bankruptcy Court on or before October 15, 2001.

1.75 "Postpetition Interest" means interest, accruing after the Petition Date, on a Claim.

1.76 "Priority Tax Claim" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.77 "Professional" means a professional person, as that term is used in sections 327 and 1103 of the Bankruptcy Code.

1.78 "Professional Fee Claim" means a Professional's Claim for compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and before and including the Effective Date.

1.79 "Pro Rata" means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in that Class, unless the Plan provides otherwise.

1.80 "Ratable Proportion" means the ratio that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims of the same Class plus all Disputed Claims in such Class.

1.81 "Reinstated" or "Reinstatement" means, with respect to the treatment of a Claim or Interest under this Plan, that the Claim or Interest will not be impaired, as that term is used in section 1124 of the Bankruptcy Code.

1.82 "Reserve Accounts" shall mean, collectively, the accounts established pursuant to the Reserve Order.

1.83 "Reserve Order" shall mean the Stipulation and Order with Respect to the Use of, and Limited Release of Liens with Respect to, Collateral, entered by the Bankruptcy Court on October 23, 2001.

1.84 "Sale Order" means that certain Order Under 11 U.S.C. §§ 105, 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004, 6006 and 9014 (I) Approving the Asset Purchase Agreement with HMTF Foods Acquisition Corp., (II) Approving Debtors' Sale of Its Businesses Free and Clear of Liens, Claims, Encumbrances and Interests, (III) Determining that Such Sale is Exempt from any Stamp, Transfer, Recording or Similar Taxes, and (IV) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, entered by the Bankruptcy Court on May 10, 2001 (Docket No. 380).

1.85 "Scheduled" means, with respect to any Claim or Interest, that a Debtor has listed the Claim or Interest in its Schedules.

1.86 "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed in the Bankruptcy Court by the Debtors or any of them, as they may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.87 "Secured Claim" means a Claim that is secured by a Lien upon Collateral.

1.88 "Senior Lender Cause of Action Resolution" has the meaning ascribed to such term in Article V.B.12 of the Plan.

1.89 "Senior Subordinated Notes" means the 10 1/4% Senior Subordinated Notes.

1.90 "Subordinated Claim" means all Claims (i) arising from fines, penalties, or punitive damages, (ii) arising from rescission of a purchase or sale of a security of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a claim, or (iii) claims subordinated to general unsecured claims under 11 U.S.C. § 510(b) or (c).

1.91 "Subordination Rights Waiver" has the meaning ascribed to such term in Article V.B.12 of the Plan.

1.92 "10 ¼% Senior Subordinated Notes" means the 10 ¼% Senior Subordinated Notes Due 2009, issued by VFI pursuant to an indenture dated June 29, 1999.

1.93 "The Bank of New York" means The Bank of New York, a New York banking corporation, doing business at 101 Barclay Street, New York, New York.

1.94 "Trade Debt Representative" has the meaning ascribed to such term in Article V.B.15 of the Plan.

1.95 "Unclaimed Distribution Reserve" means the segregated account established by the LLC Manager as described in Article V.E.2.

1.96 "VF Brands" means VF Brands, Inc., a Delaware corporation, debtor and debtor-in-possession in Chapter 11 Case No. 01-00285 (MFW) pending in the Bankruptcy Court.

1.97 "VF Distribution" means Vlasic Foods Distribution Company, an Arkansas corporation, debtor and debtor-in-possession in Bankruptcy Case No. 01-00289 (MFW) pending in the Bankruptcy Court.

1.98 "VFI" means Vlasic Foods International Inc., a New Jersey corporation, debtor and debtor-in-possession in Chapter 11 Case No. 01-00286 (MFW) pending in the Bankruptcy Court.

1.99 "VFI LLC" means the Delaware limited liability company to be established in accordance with the Plan.

1.100 "VFI LLC Members' Agreement" means the members agreement pursuant to which the VFI LLC shall be formed and governed and shall in all respects be acceptable to the Committee and the Debtors, substantially in the form contained in the Plan Supplement, and which shall set forth the responsibilities and power of the LLC Manager, which is incorporated in full into and is a part of the Plan as set forth herein. The VFI LLC Members' Agreement shall be filed with the Court no later than October 15, 2001.

1.101 "VF Standards" means Vlasic Standards, Inc., a New Jersey corporation, debtor and debtor-in-possession in Chapter 11 Case No. 01-00290 (MFW) pending in the Bankruptcy Court.

1.102 "VIB" means Vlasic International Brands Inc., a Delaware corporation, debtor and debtor-in-possession in Chapter 11 Case No. 01-00291 (MFW) pending in the Bankruptcy Court.

1.103 "VIS" means Vlasic International Sales Inc., a New Jersey corporation, debtor and debtor-in-possession in Chapter 11 Case No. 01-00292 (MFW) pending in the Bankruptcy Court.

1.104 "Voting Deadline" means the date set by the Bankruptcy Court by which all Ballots for acceptance or rejection of this Plan must be received .

1.105 "Warrants" means the warrants received as part of the consideration for the sale of certain estate assets to PFC, which shall be governed by the warrant agreement substantially in the form annexed to the Disclosure Statement.

## C. Rules of Interpretation

1. *General*

In this Plan (a) any reference to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or on particular terms and conditions means the agreement or document substantially in that form or on those terms and conditions, (b) any reference to an existing document or exhibit means that document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

2. *"Including"*

As used in this Plan, "including" means "including without limitation."

3. *"On"*

With reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

## D. Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.

### TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

#### A. Administrative Claims

Each holder of an Allowed Administrative Claim shall receive, on the latest of (i) the Distribution Date, (ii) the date on which its Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date on which its Administrative Claim becomes payable under any agreement relating thereto, Cash equal to the unpaid portion of its Allowed Administrative Claim. Notwithstanding the foregoing, (a) any Allowed Administrative Claim based on a liability incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business, in accordance with the terms and conditions of any agreement relating thereto; (b) the following Section B governs the payment of Professional Fee Claims under this Plan; and (c) any Allowed Administrative Claim may be paid on such other terms as may be agreed on between the holder of such claim and the Debtors.

#### B. Professional Fee Claims

Within 15 days after the Confirmation Date, each Professional shall provide the Debtors, the Committee, and the proposed LLC Manager with a non-binding estimate of the fees and expenses that such Professional will seek compensation for through the Effective Date. All applications for Professional Fee Claims under sections 330, 331, or 503(b) of the Bankruptcy Code filed after the Confirmation Date shall be filed and served on the LLC Manager and its counsel no later than the Administrative Claims Bar Date. Notwithstanding the foregoing, any Professional entitled to receive compensation or reimbursement of expenses under the Ordinary Course Professionals' Order or any other Order without filing an application therefor may continue to receive payments in accordance therewith, without further Bankruptcy Court review or approval. Any objection to a Professional Fee Claim filed after the Confirmation Date shall be served on the LLC Manager, its counsel, and the Professional to whose Claim the objection relates no later than 25 days after the Administrative Claims Bar Date. The LLC Manager will pay each Professional Fee Claim within ten days after the Bankruptcy Court's order granting the application is entered.

#### C. Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive, on the later of (i) the Distribution Date or (ii) the date on which its Priority Tax Claim becomes an Allowed Priority Tax Claim, Cash equal to the unpaid portion of the Allowed Priority Tax Claim. No holder of an Allowed Priority Tax Claim shall be entitled to payment of Postpetition Interest on its Allowed Priority Tax Claim.

# ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. Introduction

The Plan places all Claims and Interests, except Unclassified Claims provided for in Article II, in the Classes listed below. A Claim or Interest is placed in a particular Class only to the extent that it falls within the description of that Class, and is classified in other Classes to the extent that any portion thereof falls within the description of other Classes.

### B. Summary of Classes

| Class | Impaired/Unimpaired; Entitlement to Vote |
|---|---|
| Class 1 - Other Priority Claims | Unimpaired - Deemed to have accepted the Plan and not entitled to vote |
| Classes 2A, 2B, 2C, etc. - Secured Claims | Impaired - Entitled to vote |
| Class 3 - Intercompany Claims | Impaired - Deemed to have rejected the Plan and not entitled to vote |
| Class 4 - Convenience Claims | Impaired - Entitled to vote |
| Class 5 - General Unsecured Claims | Impaired - Entitled to vote |
| Class 6 - Subordinated Claims | Impaired - Deemed to have rejected the Plan and not entitled to vote |
| Class 7 - Interests | Impaired - Deemed to have rejected the Plan and not entitled to vote |

### C. Treatment of Classes

1. *Class 1 - Other Priority Claims*

   a. *Claims in Class:* Class 1 consists of all Other Priority Claims against all Debtors.

   b. *Treatment:* On the later of (i) the Distribution Date or (ii) the date on which its Other Priority Claim becomes an Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive Cash equal to the full amount of its Allowed Other Priority Claim.

2. *Classes 2A, 2B, 2C, etc. - Secured Claims*

   a. *Claims in Classes:* Classes 2A, 2B, 2C, etc., each contain a single Secured Claim, and in the aggregate include all Secured Claims against all Debtors. Each Class denominated "Class 2_" is a separate Class for all purposes under the Bankruptcy Code and the Plan, including for voting purposes. The Debtors will list all Classes identified as "Class 2_," and identify the Claim included in each, in the Ballot Summary and in any other filing or document, as necessary. If the Claim of a holder of a Secured Claim exceeds the value of the Collateral that secures it, such holder will have a Secured Claim equal to the Collateral's value and a General Unsecured Claim for the deficiency.

   b. *Treatment:* On the later of (i) the Distribution Date, and (ii) the date on which the Secured Claim becomes due under any agreement governing its payment, each holder of an Allowed Secured Claim will either (a) receive deferred Cash payments totaling at least the allowed amount of such Secured Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in the respective Debtor's interest in such Collateral, (b) receive the subject Collateral upon

abandonment by a Debtor, (c) receive payments or Liens amounting to the indubitable equivalent of the value of such holder's interest in the respective Debtor's interest in such Collateral, (d) be Reinstated, or (e) receive such other treatment as the respective Debtor and such holder shall have agreed upon in writing. To the extent that the value of any Collateral securing a Secured Claim exceeds the amount of the Secured Claim, its holder shall receive interest, fees, costs, and charges as may be payable under section 506(b) of the Bankruptcy Code.

The Plan does not seek to affect the Liens of the holders of Secured Claims. Such liens will remain in place until such time as the LLC Manager and the holder of the Allowed Secured Claim agree upon a reserve or the Bankruptcy Court determines the amount of a reserve at or prior to Confirmation.

3.   *Class 3 - Intercompany Claims*

a.   *Claims in Class:* Class 3 consists of all Intercompany Claims held by the Debtors.

b.   *Treatment:* On the Effective Date, Intercompany Claims will be cancelled and holders of Intercompany Claims shall not receive any distribution on account of their Claims.

4.   *Class 4 - Convenience Claims*

a.   *Claims in Class:* Class 4 consists of all Convenience Claims against the Debtors. Each holder of a General Unsecured Claim that is Allowed in an amount that is less than or equal to the Convenience Cap Amount shall be deemed to have elected to treat such Claim as a Convenience Claim.

b.   *Treatment:* On the Distribution Date, each holder of an Allowed Convenience Claim will receive Cash equal to 28% of its Allowed Convenience Claim. For the purposes of determining the eligibility of claims for inclusion in Class 4, claims of holders of Senior Subordinated Notes shall not be eligible for inclusion in Class 4.

5.   *Class 5 - General Unsecured Claims*

a.   *Claims in Class:* Class 5 consists of Senior Subordinated Note Claims and General Unsecured Claims, other than Intercompany Claims and Convenience Claims.

b.   *Treatment:* Each holder of an Allowed Class 5 Claim will receive its Pro Rata share of the LLC Membership Interests.

c.   *Post-Confirmation Redemption of Certain Claims.* Notwithstanding anything contained herein, the VFI LLC Members' Agreement shall provide that on or from time to time after the Effective Date until the date that is 120 days after the Effective Date, unless otherwise extended by the Bankruptcy Court, the LLC Manager may, in its sole discretion, offer all holders of Class 5 Claims whose Allowed Claims do not exceed an amount to be determined by the LLC Manager (the "Offer Amount"), in its sole discretion, a Cash payment equal to between 20% and 25% (the exact amount within that range to be determined by the LLC Manager, the "Redemption Percentage") of each such holder's Allowed Claim. No distribution pursuant to this offer shall be made to any holder of a Class 5 Claim who does not accept such offer in writing, and no such holder may accept the offer with respect to any amount less than the entire amount of such holder's Claim. In the event that any such offer is oversubscribed as determined by the LLC Manager in its sole discretion, the LLC Manager may choose to either reduce the Offer Amount and recognize acceptances corresponding to such reduced Offer Amount, or pay the Redemption Percentage of a prorated amount of each such holder's Class 5 Claim while leaving the balance of each such Class 5 Claim intact.

6.   *Class 6 - Subordinated Claims*

a.   *Interests in Class:* Class 6 consists of all Subordinated Claims against the Debtors.

b.   *Treatment:* Each holder of an allowed Class 6 Subordinated Claim shall not receive or retain any property or interest in property on account of their Class 6 Subordinated Claim.

7.  *Class 7 - Interests*

   a.  *Interests in Class:* Class 7 consists of all Interests in the Debtors.

   b.  *Treatment:* On the Effective Date, all Class 7 Interests shall be cancelled and the Interest holders shall not receive or retain any property or interest in property on account of their Class 7 Interests.

## D.  Allowed Claims

Notwithstanding any provision herein to the contrary, the VFI LLC shall only make distributions to holders of Allowed Claims. No holder of a Disputed Claim will receive any distribution on account thereof until and to the extent that its Disputed Claim becomes an Allowed Claim. The LLC Manager may, in its sole discretion, withhold distributions otherwise due hereunder to the holder of a Claim until the Claims Objection Deadline, to enable the LLC Manager to file a timely objection thereto. The LLC Manager will establish a reserve for Disputed Claims in accordance with Article VI.B hereof. The presence of a Disputed Claim in any Class will not be a cause to delay distribution to Allowed Claims in that Class or in junior Classes, so long as a reserve is created for the Disputed Claim in accordance herewith. Any holder of a Disputed Claim that becomes an Allowed Claim after the Distribution Date will receive its distribution, without Postpetition Interest (except as otherwise expressly provided in the Plan), on the next Periodic Distribution Date in accordance with the provisions of this Plan.

## E.  Postpetition Interest

In accordance with section 502(b)(2) of the Bankruptcy Code, the amount of all Claims against the Debtors shall be calculated as of the Petition Date. Except as otherwise explicitly provided herein or in an order of the Bankruptcy Court, no holder of a Claim shall be entitled to or receive Postpetition Interest.

## F.  Alternative Treatment

Notwithstanding any provision herein to the contrary, any holder of an Allowed Claim may receive, instead of the distribution or treatment to which it is entitled hereunder, any other distribution or treatment to which it and, prior to the Effective Date, the Debtor obligated on its Claim or, on or after the Effective Date, the LLC Manager, may agree in writing.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

## A.  Dissolution of Corporate Existence

After the Effective Date, the LLC Manager shall use its reasonable best efforts to dissolve the Debtors and any affiliates of the Debtors as soon as reasonably practical to the extent dissolution does not, in the judgment of the LLC Manager, impair administration of the Plan. In that connection, the LLC Manager shall prepare and file all corporate resolutions, statements, notices, tax returns and other documents necessary to accomplish such dissolutions, and the Confirmation Order shall provide for the appointment of the LLC Manager as the authorized signatory to execute on behalf of each Debtor or any affiliate any and all documents necessary to accomplish such dissolutions.

Upon the filing of a certificate of dissolution (or other document or pleading, as appropriate) by the LLC Manager on behalf of the Debtors with the Bankruptcy Court, each of the Debtors will be dissolved for all purposes effective as of the date of filing of such certificate without the necessity for any other or further actions to be taken by or on behalf of such entities or payments to be made in connection therewith; provided, however, that the LLC Manager may, if it so elects, file a certificate of dissolution for each Debtor in such Entity's jurisdiction of incorporation. Such certificate of dissolution may be executed by the LLC Manager without the need for any action or approval by the shareholders or board of directors of any of the Debtors. From and after the Effective Date, each of the Debtors (i) for all purposes will be deemed to have dissolved and withdrawn its business operations from any state or country which it was previously conducting, or is registered or licensed to conduct, its business operations, and will not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, (ii) will be deemed to have been cancelled pursuant to the Plan all of their Interests, and (iii)

PLAN-11

will not be liable in any manner to any taxing authority for franchise, business, capital, license or similar taxes accruing on or after the Effective Date. From and after the Effective Date, to the extent the bylaws, certificate of incorporation or other charter and corporate documents of any Debtor are inconsistent with the terms and provisions of the Plan, the Plan will supersede such bylaws, certificate of incorporation, or other charter and other corporate documents, as the case may be, and such bylaws, certificates of incorporation or other charter and corporate documents shall be deemed amended to the extent inconsistent with the terms and provisions of the Plan. Neither the LLC Manager nor the VFI LLC shall have or incur any liability for actions taken or not taken in respect of this Article IV.A.

## B. Corporate Action

### 1. *Cancellation Of Senior Subordinated Notes and Agreements*

On the Effective Date, except as otherwise provided for in the Plan, the Senior Subordinated Notes and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors (the "Instruments") will be deemed cancelled and of no further force or effect without any further action on the part of the Bankruptcy Court, or any Person including, but not limited to, governmental agencies. Each indenture or other agreement that governs the rights of the holder of a Claim based on the Senior Subordinated Notes and that is administered by an indenture trustee, agent, or servicer shall continue in effect solely for the purposes of allowing such indenture trustee, agent or servicer to make the distributions to be made on account of such Claims under the Plan. Such cancellation, however, shall not impair the rights and duties under the Indenture as between the Indenture Trustee thereunder and the beneficiaries of the trusts created thereby. Further, the charging liens of the Indenture Trustee provided in the Indenture shall survive cancellation of the Indenture.

Any actions taken by an indenture trustee, agent or servicer that are not for the purposes authorized in this Article IV.B.1 shall not be binding upon the Debtors. Except with respect to the making of distributions as provided in the preceding paragraph, the Debtors or LLC Manager may, if cause exists, terminate any indenture or other governing agreement and the authority of any indenture trustee, agent or servicer to act thereunder at any time by giving five (5) days' written notice of termination to the indenture trustee, agent, or servicer. If distributions under the Plan on account of Senior Subordinated Note Claims have not been completed at the time of termination of the Indenture or other governing agreement, the LLC Manager shall designate a distribution agent to act in place of the indenture trustee, agent or servicer, and the provisions of this Article IV.B.1 shall be deemed to apply to the new distribution agent.

### 2. *Cancellation Of Stock, Old Warrants Interests, and other Interests*

As of the Effective Date, by virtue of the Plan and without any action necessary on the part of the holders thereof, each share of Old Common Stock issued and outstanding or held in treasury, shall be cancelled and retired and no consideration will be paid or delivered with respect thereto. Notwithstanding anything herein to the contrary, holders of Old Common Stock shall not be required to surrender such stock to the Debtors. Additionally, as of the Effective Date, Old Warrants Interests and other Interests, to the extent not already cancelled, shall be cancelled. Notwithstanding the foregoing, the LLC Manager shall be entitled to retain and/or vote all shares of Old Common Stock to the extent necessary to administer the this Plan and comply with any other applicable requirements.

## C. Directors and Officers

On the Effective Date, all officers and directors of the Debtors shall be discharged and relieved of all responsibilities and the respective boards shall be dissolved, and the LLC Manager shall be authorized to execute, deliver, file, or record any document or take any other action necessary or desirable to implement the terms of this Plan. The only remaining activities of the Debtors shall be the dissolution of the Debtors by the LLC Manager in the manner set forth in Article IV.A hereof and any other actions required to be taken on behalf of the Debtors to administer this Plan.

## D. No Revesting of Assets

The property of the Debtors' Estates shall not revest in the Debtors on or after the Effective Date but shall vest in the VFI LLC, to be administered by the LLC Manager until liquidated and distributed according to the terms of this Plan and the Confirmation Order.

## E. Preservation of Rights of Action

Entry of the Confirmation Order shall not constitute a waiver or release by the Debtors or their Estates of any of the Causes of Action, all of which shall be preserved for the benefit of the VFI LLC. On and after the Effective Date, the VFI LLC shall be assigned all Causes of Action, and, under section 1123(b)(3) of the Bankruptcy Code, the LLC Manager shall be authorized to enforce, prosecute, settle or compromise (subject to the provisions of Article VI.C), all Causes of Action. The VFI LLC may pursue such assigned Causes of Action as appropriate, in accordance with the best interests of the holders of the LLC Membership Interests. The failure of the Debtors or the Creditors' Committee to describe or identify a claim, right of action, suit, or proceeding in this Disclosure Statement shall not constitute a waiver, release or abandonment by the Debtors, their Estates, the Creditors' Committee or VFI LLC of such claim, right of action, suit or proceeding. The substantive consolidation of the Debtors and their Estates pursuant to the Plan shall not, and shall not be deemed to, prejudice the Causes of Action, which shall survive entry of the Confirmation Order for the benefit of the holders of the LLC Membership Interests as if there had been no substantive consolidation of the Debtors and their Estates.

## F. Exemption from Certain Transfer Taxes

In accordance with section 1146(c) of the Bankruptcy Code, neither the issuance, transfer, or exchange of a security or the delivery of an instrument of transfer under this Plan shall be taxed under any law imposing a stamp tax or similar tax. The Confirmation Order shall direct all governmental officials and agents to forego the assessment and collection of any such tax.

## G. Substantive Consolidation

The Plan is predicated upon entry of an order substantively consolidating the Estates and the Chapter 11 Cases for purposes of all actions associated with confirmation and consummation of the Plan. On the Confirmation Date or such other date as may be set by an order of the Bankruptcy Court, but subject to the occurrence of the Effective Date, (i) all Intercompany Claims will be eliminated, (ii) all assets and liabilities of the direct and indirect Debtor-affiliates of VF Brands will be treated as if they were merged with the assets and liabilities of VF Brands, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors will be deemed to be one obligation of VF Brands, and (iv) each Claim filed or to be filed against any Debtor will be deemed filed only against VF Brands and will be deemed a single Claim against and a single obligation of VF Brands. On the Confirmation Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment, or performance made by the Debtors as to the obligations of another Debtor will be released and of no further force and effect. Notwithstanding any provision of the Plan or Disclosure Statement to the contrary, the rights of parties in interest to contest claims of non-Debtor affiliates of the Debtors are preserved.

Unless the Bankruptcy Court has approved the substantive consolidation of the Chapter 11 Cases by a prior order, the Plan will serve as, and will be deemed to be, a motion for entry of an order substantively consolidating the Estates and the Chapter 11 Cases. If no objection to substantive consolidation is timely filed and served by any holder of a Claim in a Class impaired by the Plan on or before the Voting Deadline or such other date as may be established by the Bankruptcy Court, an order approving substantive consolidation (which may be the Confirmation Order) may be entered by the Bankruptcy Court. If any such objections are timely filed and served, a hearing with respect to substantive consolidation and the objections thereto will be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

## H. Warrants

The Warrants will be issued within five (5) Business Days of the later to occur of (i) the date that the order of the Bankruptcy Court confirming the Plan has become a Final Order or (ii) the date upon which all conditions to the effectiveness of the Plan have been satisfied or waived. The issuance of the Warrants is conditioned upon the satisfaction of the following conditions: (x) the Warrants must be distributed and must be subject to transfer restrictions in such a manner under the Plan so as not to cause Pinnacle to become a reporting company under the Exchange Act, unless Pinnacle at the time the Warrants are issued is otherwise already a reporting company under the Exchange Act; and (y) the Bankruptcy Court must issue an order in form and substance reasonably satisfactory to PFC that (A) confirms the Plan under section 1129 of the Bankruptcy Code and (B) also provides that (i) the issuance by Pinnacle of the Warrants (and the securities purchasable upon exercise of the Warrants) and the distribution by Pinnacle of the Warrants (and the securities purchasable upon exercise of the Warrants)

pursuant to the Plan will be exempt from the registration provisions of the Securities Act of 1933, as amended, and any state or local laws requiring registration, pursuant to section 1145 of the Bankruptcy Code, and (ii) Pinnacle and its officers, directors, employees, attorneys and agents will be entitled to the protections set forth in section 1125(e) of the Bankruptcy Code. Notwithstanding anything else in the Plan, the LLC Manager is empowered to take such actions as may be necessary or appropriate with respect to the Warrants so as to not cause the issuer of the Warrants to become a reporting company under the Exchange Act, unless at such time the issuer is otherwise a reporting company.

## ARTICLE V.

## PROVISIONS GOVERNING DISTRIBUTIONS

### A. LLC Manager

A person selected initially by the Creditors' Committee and thereafter by the Managing Board shall serve as the LLC Manager and shall make (or arrange to make) all distributions required under this Plan. The LLC Manager may employ or contract with other Persons including, but not limited to, the Indenture Trustee, to assist in the performance of its duties in accordance with the terms of the VFI LLC Members' Agreement. Solely to the extent necessary to administer the Plan, the LLC Manager shall be deemed to be the sole authorized signatory of each Debtor and shall be deemed to be the sole officer, director or voting shareholder of the Debtors for any legitimate corporate purpose, including participation in the liquidation of affiliates of the Debtors and amending any bylaws or certificates of incorporation.

As soon as practicable after the Effective Date, the Debtors, on their own behalf and on behalf of holders of Allowed Class 5 Claims, shall execute the VFI LLC Members' Agreement appointing the LLC Manager and setting forth the responsibilities and powers of the LLC Manager.

Prior to the Effective Date, the Debtors shall have taken all other steps necessary to establish the VFI LLC. The VFI LLC is to be formed for the object and purpose of engaging in any lawful act or activity for which limited liability companies may be formed under the Delaware Limited Liability Company Act, as amended from time to time, including, without limitation, borrowing funds, purchasing Claims, and other actions in the best interest of holders of LLC Membership Interests all as set forth in the VFI LLC Members' Agreement.

After the Effective Date, the LLC Manager shall (i) establish one or more general accounts for the deposit of funds to be distributed under the Plan, (ii) create and fund any Distribution Reserve in accordance with the Plan, and (iii) liquidate all other assets, including Causes of Action. The LLC Manager may (and with respect to the Reserve Accounts and Distribution Reserve, shall) invest all Cash deposited in any account or reserve in a manner that shall yield a reasonable return, taking into account the safety of the investment consistent with the provisions set forth in section 345 of the Bankruptcy Code .

The LLC Manager shall receive from funds otherwise available for distribution hereunder, without further Bankruptcy Court approval, reasonable compensation for its services under the Plan and reimbursement of its reasonable out-of-pocket expenses incurred in connection with those services, including the fees and expenses of any Professionals or other agents that it employs. The LLC Manager may withhold sufficient funds to pay all projected operating expenses of the LLC Manager, including but not limited to liability insurance for the benefit of the LLC Manager and his employees and representatives for acting in such capacity. The LLC Manager shall not be required to give any bond, surety, or other security for the performance of its duties, unless otherwise ordered by the Bankruptcy Court, and, in that event, all costs and expenses of procuring any such bond shall be paid from funds otherwise available for distribution hereunder.

The Debtors' Estates shall indemnify and hold harmless, to the fullest extent permitted by the laws of the State of Delaware, the LLC Manager and each Professional or other person employed by the LLC Manager to carry out the provisions of this Plan (each, an "Indemnified Person") from and against all liabilities, damages, claims, costs, and expenses (including attorney fees) arising from or in connection with their actions or omissions in performing their duties under this Plan, so long as the Indemnified Person acted in good faith and in a manner reasonably believed to be in or not inconsistent with the Estates' best interests. Any amount payable to an Indemnified Person in accordance with this paragraph shall constitute an Administrative Claim in the Chapter 11 Cases and shall be payable as incurred from funds held by the LLC Manager for distributions under this Plan.

Any and all distributions to creditors contemplated by Articles II and III of this Plan, including distributions on account of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, and Convenience Claims, shall be made by the LLC Manager or its agents on or after the Distribution Date in accordance with the terms of this Plan and the VFI LLC Members Agreement to the extent not already satisfied.

## B.   VFI LLC.

### 1.   *The Establishment of the VFI LLC*

The VFI LLC will be established and the LLC Manager will be appointed as of the Effective Date. VFI LLC, the LLC Manager, and the Managing Board shall be fiduciaries with respect to the holders of LLC Membership Interests and the LLC Manager shall act to maximize recovery to VFI LLC for the benefit of its members.

### 2.   *Acquisition of Plan Assets and Administrative Obligations*

On the Effective Date the Estates and the Debtors shall be deemed to have, and shall have, irrevocably assigned and transferred to the VFI LLC all of their rights, title and interest in and to any and all property and assets of the Debtors, including, but not limited to, cash, the right to receive Warrants upon satisfaction of the conditions to issuance thereof, and Causes of Action, and any proceeds thereof (collectively, the "Plan Assets") free and clear of all Liens, claims, encumbrances and other interests. None of the Debtors shall have any further rights, title or interest in any of the Plan Assets, and none of the Debtors shall be entitled to receive any portion of any amounts recovered on account of any of the Causes of Action or other liquidation of Plan Assets.

Any and all Administrative Claims and administrative obligations of the Debtors not otherwise satisfied in accordance with the terms of this Plan, including any obligations imposed by the Bankruptcy Court with respect to section 1114 of the Bankruptcy Code, shall be assumed by the VFI LLC, including, but not limited to, any administrative obligations relating to any of the Debtors' employee pension, benefit, retirement and health plans.

### 3.   *LLC Membership Interests*

Each holder of a Class 5 General Unsecured Claim shall receive LLC Membership Interests based upon the Pro Rata portion of its Allowed Claim.

### 4.   *Establishment of LLC Membership Interest Registers*

The VFI LLC shall maintain a register of the persons granted LLC Membership Interests therein and shall be entitled to treat as the owner of any such interest for all purposes the person or entity in whose name the LLC Membership Interest is registered.

### 5.   *LLC Membership Interests Granted on Account of Disputed Claims*

Upon a Disputed Claim becoming an Allowed Claim, the holder of such Allowed Claim shall be granted LLC Membership Interests based on the Pro Rata portion of its Allowed Claim. Such holder of a Disputed Claim shall have no voting or other rights until such time as the Disputed Claim shall have become an Allowed Claims and a distribution of LLC Membership Interests shall have been made on account of such Allowed Claim in accordance with the terms hereof.

### 6.   *Limitations on Transferability of LLC Membership Interests*

a.   Transfer of LLC Membership Interests shall be restricted. The prior consent of the VFI LLC shall be required for any sale or transfer of a LLC Membership Interest to be effective and the VFI LLC shall consent to sales and transfers of LLC Membership Interests only if, in the reasonable judgment of the VFI LLC based upon representations as to the manner of the proposed sale or transfer and other evidence or advice of counsel, the sale or transfer would not create a material risk that the VFI LLC would be treated as a publicly traded partnership under I.R.C. section 7704 and is otherwise in compliance with applicable law. Notwithstanding the foregoing, no transfer of such interest shall be permitted to the extent the transfer would violate or require registration under any federal or state securities law.

b.  Notwithstanding the provisions of the Plan, the economic interest (but not the membership interest) may be transferred (1) to a relative, spouse or former spouse or relative of the spouse or former spouse of the original holder of such interest (the "Beneficial Interest Holder"), (2) to any trust or estate in which such Beneficial Interest Holder holds more than 50% of the beneficial interests (excluding contingent interests), (3) to any corporation, partnership or other organization in which such Beneficial Interest Holder is the beneficial owner of more than 50% of the equity securities or equity interests, (4) to any person that owns, directly or indirectly, more than 50% of the voting securities of such Beneficial Interest Holder, (5) upon the death of such Beneficial Interest Holder or pursuant to operation of law, or (6) incidental to the sale of all or substantially all of the assets of such Beneficial Interest Holder.  Notwithstanding the foregoing, no transfer of such interest shall be permitted to the extent the transfer would violate or require registration under any federal or state securities law or would cause any adverse tax (including, but not limited to, causing the VFI LLC to become a publicly traded partnership under the meaning of I.R.C. section 7704), ERISA or other effect on the VFI LLC, and provided further that the transferee of such economic interest may not be substituted as a member.  The Beneficial Interest Holder seeking to transfer such interest shall deliver an opinion of counsel respecting compliance with applicable laws and the absence of an adverse effect on the VFI LLC, and may be prohibited from transferring such interests solely on the grounds that (a) no such legal opinion has been given or (b) the legal opinion given is unsatisfactory or insufficient, in the sole opinion of counsel for the VFI LLC.

c.  In no event may any LLC Membership Interests, or the economic interest therein, be transferred to or for the benefit of the Debtors.

d.  The VFI LLC and the LLC Manager shall not recognize any transfer of LLC Membership Interests, or the economic interest therein, unless such transfer strictly complies with the foregoing requirements and shall not recognize the rights of any purported transferee under any non-complying transfer, including any rights to receive distributions from the VFI LLC, either directly or indirectly.  For purposes of this section, VFI LLC interests include, among other things, (a) any interest in the capital or profits of the VFI LLC, and (b) any rights in, to or under any financial instrument or contract, the value of which is determined, in whole or in part, by reference to the VFI LLC, including, but not limited to, the amount of any distributions from the VFI LLC, the value of the assets of the VFI LLC, or the results of the VFI LLC's operations or administration.

7.    *Transfer of Causes of Action by Holders*

The irrevocable transfer of the Causes of Action to the VFI LLC will be treated as an irrevocable deemed transfer of such Causes of Action to the holders of Allowed Class 5 Claims followed by an irrevocable deemed contribution of such Causes of Action by such holders of Allowed Class 5 Claims to the VFI LLC.

8.    *Funding the VFI LLC*

On the Effective Date, the LLC Manager shall establish reserves in an amount to be determined by the LLC Manager subject to approval of the Managing Board, to (i) pay the fees, expenses and costs of VFI LLC and the LLC Manager (such reserve, the "LLC Manager Reserve"), and (ii) pay the fees, expenses and costs of the Managing Board (such reserve, the "Managing Board Reserve").  The LLC Manager Reserve and the Managing Board Reserve shall be funded in the aggregate amount of $5 million, and shall not be subject to any liens securing any Secured Claim.  The VFI LLC Members' Agreement will provide that the LLC Manager may, with the consent of the Managing Board, distribute funds held in the LLC Manager Reserve or the Managing Board Reserve to VFI LLC members to the extent such reserves exceed the amounts reasonably anticipated to be necessary.  In addition, the LLC Manager may, with the written consent of the Managing Board, borrow funds to finance the operations of the VFI LLC, which borrowing(s) may include entity participation features.

9. *Distribution of Proceeds*

Subject to the terms and limitations set forth in the VFI LLC Members' Agreement and the provisions of Article V.B.12 of the Plan, the LLC Manager shall distribute any proceeds of the liquidation of the Plan Assets, including Causes of Action, net of amounts paid or reductions made by reason of setoff and after payment or reserve in full for administrative expenses of VFI LLC (such net proceeds, the "Distribution Proceeds"), to the holders of LLC Membership Interests based on each holder's Ratable Proportion. Except as otherwise provided herein, distributions of the Distribution Proceeds shall be governed by the VFI LLC Members' Agreement.

10. *Distributions*

The VFI LLC Members' Agreement shall provide that the VFI LLC shall distribute the Distribution Proceeds to holders of LLC Membership Interests at such times as the Managing Board deems appropriate, but only after paying all outstanding administrative expenses of the VFI LLC and reserving for (i) the reasonably anticipated amount of any such administrative expenses that may be incurred thereafter, and (ii) any unpaid Allowed Secured Claims. The LLC Manager shall hold the Warrants for ultimate liquidation. The Managing Board may direct the LLC Manager to distribute the Warrants to holders of LLC Membership Interests or sell them in a manner consistent with the terms of the Pinnacle Asset Purchase Agreement, Warrant Agreement, Plan, VFI LLC Members' Agreement, and applicable law.

11. *Powers and Duties of the LLC Manager*

The provisions of the VFI LLC Members' Agreement shall in all respect govern the duties and responsibilities of the VFI LLC and the LLC Manager, which shall include provisions that the LLC Manager shall at all times act solely for the benefit of the holders of LLC Membership Interests and to maximize recovery to VFI LLC and shall not act for the benefit of or have any obligations to or on behalf of the Debtors and further provide that the LLC Manager shall be empowered: (a) to take all steps and execute all instruments and documents necessary to effectuate the VFI LLC, (b) to pay all administrative expenses of the VFI LLC, (c) to make distributions contemplated by the VFI LLC, (d) to comply with the Plan and the VFI LLC Members' Agreement and the obligations thereunder, (e) to employ, retain or replace Professionals to represent it with respect to its responsibilities, (f) to investigate any claims, rights, or other Causes of Action assigned to the VFI LLC, (g) to prosecute, litigate, settle, adjust, retain, enforce or abandon any claims (subject to any other provisions hereof), rights, or other Causes of Action assigned to the VFI LLC, including any counterclaims to the extent such counterclaims are potential setoffs against the proceeds of any such Causes of Action, (h) to liquidate all Plan Assets transferred to the VFI LLC, (i) in the event that the LLC Manager shall determine, in the sole and absolute discretion of the LLC Manager, that compliance with any applicable securities law requirements is or will be unduly onerous, costly, or impossible, the LLC Manager may, with the approval of the Managing Board, take any action necessary or appropriate in order to comply with the requirements of the Securities Act, the Exchange Act, and/or the Investment Company Act of 1940, as amended, or to qualify for any applicable exemptions from such requirements; and (j) to exercise such other powers as may be vested in the LLC Manager pursuant to an order of the Bankruptcy Court or as deemed by the LLC Manager to be necessary and proper to carry out the provisions of the VFI LLC. The VFI LLC Members' Agreement shall further provide that, subject to the provisions of Article V.B.12 of the Plan and the requirement to consult with the Managing Board, the LLC Manager shall have sole and absolute discretion to hold, liquidate, pursue, prosecute, release, settle or abandon (subject to any other provisions hereof), as the case may be, any and all claims, rights, Plan Assets, or other Causes of Action assigned to the VFI LLC pursuant to this Plan, as it determines in the exercise of its business judgment, and shall have no liability for the outcome of any decisions made by it to the extent not inconsistent with the Plan and VFI LLC Members' Agreement. Notwithstanding anything contained herein to the contrary, in negotiating any settlement with the Bank Group, the LLC Manager shall consult with, but need not obtain the approval of, the Managing Board in connection therewith, but shall in any event, obtain the approval of the Bankruptcy Court of any such settlement on notice to all holders of Class 5 claims (other than claims redeemed pursuant to Art. III.C.5.c). For purposes of exercising its powers, including, but not limited to the pursuit of Causes of Action, each of the LLC Manager and the VFI LLC shall be deemed to be a representative of the Estates pursuant to section 1123 of the Bankruptcy Code.

12. *Authority to Settle Causes of Action*

Subject to the provisions of the VFI LLC Members' Agreement and with the written consent of the Managing Board to a proposed settlement, disposition or abandonment of a Cause of Action, the LLC Manager shall be empowered and authorized, without approval of the Bankruptcy Court or notice to any other Person, to settle, adjust, dispose of or abandon any claims, rights or other Causes of Action assigned to the VFI LLC, including any counterclaims to the extent such counterclaims are potential setoffs against the proceeds of any such Causes of Action; provided, however, that the LLC Manager cannot abandon a claim or claims with respect to the Bank Group, which abandonment shall include, but not be limited to, the failure of the LLC Manager to sue or negotiate a settlement with the Bank Group prior to the expiration of the applicable statute of limitations, unless such abandonment is approved by the Bankruptcy Court. Notwithstanding the foregoing or any other provisions of the Plan (a) the Distribution Proceeds derived from any judgment, settlement or other complete or partial resolution of any Cause of Action against the Bank Group or any member thereof, which, subject to the provisions of the Indenture, may be entitled to the benefits of subordination of the Senior Subordinated Notes (a "Senior Lender Cause of Action Resolution"), shall be allocated among the holders of Class 5 Claims so as to result in a proportionate allocation among such holders of the entire value of such Senior Lender Cause of Action Resolution after giving effect to the value of any benefits (apart from such Distribution Proceeds) derived by the holders of Senior Subordinated Note Class 5 Claims arising from any judicial, written or oral waiver, release, discharge, agreement not to enforce or other agreement or judgment of similar effect in respect of such subordination rights (a "Subordination Rights Waiver") given or obtained in connection with or in anticipation of such Senior Lender Cause of Action Resolution, and (b) if a Subordination Rights Waiver was given or obtained in connection with or in anticipation of such Senior Lender Cause of Action Resolution, (i) such allocation of Distribution Proceeds may be effected on a basis other than the respective Ratable Proportions of the holders of Class 5 Claims in order to comply with immediately preceding clause (a), and (ii) such allocation shall be subject to the approval of the Bankruptcy Court on notice to all holders of Class 5 Claims (other than Claims redeemed pursuant to Article III.C.5.c). Nothing herein or in the order confirming this Plan shall be construed to suggest that any settlement which includes a Subordination Rights Waiver is either appropriate or inappropriate.

13. *Compensation of the LLC Manager*

The LLC Manager shall receive compensation for services to the VFI LLC at the LLC Manager's standard hourly rates for services and for the services of others at such firm for assisting him with its duties at the standard hourly rates charged for their services, or such other rates or terms (including incentive compensation) as may be agreed between the LLC Manager and the Managing Board, and shall be entitled to reimbursement of reasonable expenses incurred in performing its duties hereunder out of the assets of the VFI LLC, all as more fully set forth in the VFI LLC Members' Agreement or in a separate agreement setting forth the terms and conditions of the provision of such services by the LLC Manager.

14. *Indemnification and Exculpation of the LLC Manager and Managing Board*

a. From and after the Effective Date, the LLC Manager, the Managing Board, the VFI LLC, and each of their directors, members, officers, employees, agents, and attorneys shall be exculpated and indemnified as provided in the VFI LLC Members' Agreement.

b. Except as may otherwise be provided in the VFI LLC Members' Agreement, each of the LLC Manager, the Managing Board, the VFI LLC, and each of their directors, members, officers, employees, agents and attorneys, as the case may be, from and after the Effective Date, is hereby exculpated by all Persons, holders of Claims and Equity Interests, Entities, and parties in interest receiving distributions under the Plan, from any and all claims, Causes of Action, and other assertions of liability arising out of its discharge of the powers and duties conferred upon it by the Plan, the VFI LLC Members' Agreement or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law; provided that the LLC Manager or the Managing Board member, as the case may be, acts in good faith and with the same standard of care imposed on an individual or entity serving on an official committee of unsecured creditors appointed pursuant to § 1102 of the Bankruptcy Code. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any claim or Cause of Action (a) against the LLC Manager, the Managing Board, or the VFI LLC for distributions made in accordance with the Plan, or for implementing the provisions of the Plan, or (b) against any holder of a Claim for receiving or retaining payments or other distributions as provided for by the Plan.

c. Subject to the standard of care set forth in the preceding subsection, each of the LLC Manager, the Managing Board, and the VFI LLC shall not be liable for any action taken or omitted in good faith and reasonably believed by it to be authorized within the discretion or rights or powers conferred upon it by the Plan or the VFI LLC Members' Agreement. In performing its duties under the Plan and the VFI LLC Members' Agreement hereunder, each of the LLC Manager, Managing Board, and the VFI LLC shall have no liability for any action taken by the LLC Manager, Managing Board, and the VFI LLC in good faith in accordance with the advice of counsel, accountants, appraisers and other professionals retained by it or the VFI LLC. Without limiting the generality of the foregoing, the LLC Manager and the Managing Board may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by it to be genuine, and shall have no liability for actions taken in good faith in reliance thereon. None of the provisions of the Plan shall require the LLC Manager, the Managing Board, or the VFI LLC to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of its rights and powers. Each of the LLC Manager, the Managing Board, and the VFI LLC may rely without inquiry upon writings delivered to it hereunder which it reasonably believes in good faith to be genuine and to have been given by a proper Person.

### 15. *Board of Managers of the VFI LLC*

The VFI LLC Members' Agreement shall provide that the VFI LLC will be managed by a three member board of managers (the "Managing Board"). Holders of Membership Interests in the VFI LLC on account of the Senior Subordinated Notes shall be entitled to have two members of the Managing Board (the "Bondholder Representatives"). Holders of Membership Interests in the VFI LLC on account of General Unsecured Claims other than those with respect to the Senior Subordinated Notes shall be entitled to have one member of the Managing Board (the "Trade Debt Representative"). On or before the Confirmation Date the Creditors' Committee shall select two Persons or Entities to serve as the initial Bondholder Representatives of the Managing Board and the Debtors shall designate the initial Trade Debt Representative of the Managing Board. In the event an appropriate Bondholder Representative or Trade Debt Representative is not identified and willing to serve, the Debtors, in consultation with the Committee, shall appoint another individual with approval of the Court on notice. A list setting forth the identities of the initial members of the Managing Board, to the extent available, shall be filed as part of the Plan Supplement, or otherwise, in a submission to this Bankruptcy Court on or prior to the Confirmation Date. The VFI LLC Members' Agreement shall set forth the duties and responsibilities of the Managing Board and shall in all respects govern the operation and management of the VFI LLC. The VFI LLC Members' Agreement shall include, among other things, provisions for the replacement or removal of members of the Managing Board or the LLC Manager; provided, however, that a Bondholder Representative serving on the Managing Board can only be replaced with another Bondholder Representative and a Trade Debt Representative serving on the Managing Board can only be replaced with another Trade Debt Representative, provided, however, that if no willing Trade Debt Representative can be found, the LLC Manager shall appoint an appropriate person to fill such vacancy, subject to Bankruptcy Court approval. In addition, if the LLC Manager resigns, is terminated for cause by the Managing Board, or is unable to continue to serve as the LLC Manager for any reason, the Managing Board shall designate a replacement LLC Manager in accordance with the terms of the VFI LLC Members' Agreement, who shall thereby be appointed to serve as the LLC Manager without application to or approval by the Bankruptcy Court. The Managing Board will, to the extent if necessary, retain counsel to assist it.

### C. Distributions to Holders of Debt Securities Claims

#### 1. *Distributions to Indenture Trustees*

Notwithstanding any other provision hereof, the LLC Manager shall make all distributions, including distributions of LLC Membership Interests, otherwise payable to each holder of a Debt Securities Claim to the Indenture Trustee, who shall make distributions in accordance with the provisions of this Plan and the respective governing indenture.

#### 2. *Surrender of Securities or Instruments*

On or before the first Distribution Date, or as soon as practicable thereafter, each holder of an instrument evidencing a Debt Securities Claim (a "Certificate") shall surrender the Certificate to the LLC Manager, or with respect to indebtedness that is governed by an indenture, to the respective Indenture Trustee, and the Certificate shall be cancelled. No holder of a Debt Securities Claim shall receive any distribution under the Plan until the respective Indenture Trustee has received either the holder's Certificate or a reasonably satisfactory affidavit of loss and indemnity. Any holder who fails to surrender or cause to be surrendered its Certificate or to deliver a reasonably satisfactory affidavit of loss and indemnity to the LLC

Manager or the Indenture Trustee before the second anniversary of the Effective Date shall forfeit all rights and Claims in respect of its Debt Securities Claim and shall not participate in any distribution hereunder. All Cash or other property in respect of such forfeited distribution, including interest accrued thereon, shall revert to the VFI LLC in accordance with the Plan, notwithstanding any federal or state escheat laws to the contrary.

### 3. *Distribution Record Date*

At the close of business on the Distribution Record Date, the transfer ledgers for the Debt Securities shall be closed, and there shall be no further changes in the record holders of the Debt Securities. Neither the Debtors, the LLC Manager, nor any Indenture Trustee shall be obligated to recognize any transfer of Debt Securities occurring after the Distribution Record Date, but shall be entitled instead to recognize and deal for all purposes hereunder with only the record holders identified on the transfer ledgers as of the close of business on the Distribution Record Date.

## D. Means of Cash Payment

Cash payments under this Plan shall be made, in the LLC Manager's sole discretion, by checks drawn on or wire transfer from a domestic bank selected by the LLC Manager.

## E. Delivery of Distributions; Undeliverable or Unclaimed Distributions

### 1. *Delivery of Distributions in General*

The LLC Manager or the appropriate Indenture Trustee shall make distributions to each holder of an Allowed Claim (a) at the address on any proof of Claim filed by the holder (or at the holder's last known address, if no proof of Claim is filed), (b) at the address in any written notice of address change delivered to the Debtors, or the LLC Manager, (c) at the address reflected in the Schedules, if no proof of Claim has been filed and the LLC Manager has not received a written notice of a change of address, or (d) in the case of the holder of a Claim that is governed by an indenture and is administered by an Indenture Trustee, at the address (i) in the Indenture Trustee's official records, or (ii) set forth in a properly completed letter of transmittal accompanying a Certificate properly remitted in accordance with Article V.B.

### 2. *Undeliverable and Unclaimed Distributions*

a. *Holding and Investment of Undeliverable and Unclaimed Distributions.* If any holder's distribution is returned as undeliverable, no further distributions to that holder shall be made unless and until the LLC Manager or the Indenture Trustee receives notice of the holder's then-current address, at which time all outstanding distributions shall be made to the holder. Undeliverable distributions made through the LLC Manager or the Indenture Trustee shall be returned to the LLC Manager until such distributions are claimed. The LLC Manager shall establish a segregated account to serve as the Unclaimed Distribution Reserve, and all undeliverable and unclaimed Cash distributions shall be deposited therein, for the benefit of all similarly situated Persons until such time as a distribution becomes deliverable or is claimed. On each Periodic Distribution Date, the LLC Manager shall make all distributions that have become deliverable or have been claimed since the immediately preceding Periodic Distribution Date, together with any interest actually earned thereon.

b. *Failure to Claim Undeliverable Distributions.* Any undeliverable or unclaimed distribution under this Plan that does not become deliverable on or before the first anniversary of the Effective Date shall be deemed to have been forfeited and waived, and the Person otherwise entitled thereto shall be forever barred and enjoined from asserting its Claim therefor against, or seeking to recover its distribution from, the Debtors, the Estates, or their property. After the first anniversary of the Effective Date, the LLC Manager shall withdraw any amounts remaining in the Unclaimed Distribution Reserve for distribution in accordance with this Plan and the VFI LLC Members' Agreement.

## F. Fractional Distributions

The LLC Manager shall not make payments of fractions of dollars, but shall round all such fractions to the nearest whole dollar, with half dollars being rounded down. Notwithstanding any other provision of the Plan to the contrary, no fractional LLC Membership Interests will be issued pursuant to the Plan. Whenever any distribution of a fraction of an LLC Membership Interest under the Plan would otherwise be required, the actual distribution made will reflect a rounding of such

fraction to the nearest whole share (up or down), with half shares or less being rounded down and fractions in excess of half a share being rounded up.

## G. Withholding and Reporting Requirements

In connection with this Plan and all distributions hereunder, the LLC Manager shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any of those requirements. The LLC Manager shall be authorized to take all actions necessary or appropriate to comply with those withholding and reporting requirements.

## H. Setoffs

The LLC Manager may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made in respect of that Claim, claims of any nature whatsoever that the Debtors may have against the Claim's holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any claim that the Debtors may have. Nothing herein shall be deemed to expand rights to setoff under applicable law.

## ARTICLE VI.

## RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### A. Claims Objection Deadline; Prosecution of Objections

Any Debtor, before the Effective Date, and the LLC Manager, after the Effective Date and until the Claims Objection Deadline, may file an objection to any Claim. The Claims Objection Deadline does not, however, apply to objections to Claims filed or amended after the Bar Date.

### B. Distribution Reserve; Estimation of Claims

Notwithstanding anything else herein, the LLC Manager shall not be required to make distributions to holders of Allowed Class 5 Claims until the objections to Disputed Claims have been resolved. The VFI LLC shall withhold from the amounts to be distributed to holders of LLC Membership Interests amounts sufficient to be distributed on account of the LLC Membership Interests that may be granted to holders of Unsecured Claims that are Disputed Claims as of the date of distribution of proceeds, and the VFI LLC shall place such withheld proceeds in reserve (the "Distribution Reserve"). To the extent such Disputed Claims ultimately become Allowed Claims and LLC Membership Interests are granted to the holders of such Claims in accordance with the Plan, payments with respect to such interest shall be made from the Distribution Reserve. The LLC Manager shall determine the amount to reserve in the Distribution Reserve based on the amount of Disputed Claims determined or estimated for the purposes of a Distribution Reserve. As to any Disputed Claim, upon a request for estimation by the Debtors or the LLC Manager, the Bankruptcy Court shall determine what amount is sufficient to withhold in the Distribution Reserve on account of such Disputed Claim. The Debtors or the LLC Manager may request estimation for every Disputed Claim that is unliquidated and the LLC Manager shall withhold the Distribution Reserve based upon the estimated amount of such Claim as set forth in a Final Order. The estimated amount of any Disputed Claim so determined by the Bankruptcy Court will constitute the maximum recovery that the holder thereof may recover after the ultimate liquidation of its Disputed Claim, subject to the rights of the holders of such claims under section 502(j) of the Bankruptcy Code and applicable law. Until a Disputed Claim that is liquidated is estimated, the LLC Manager shall withhold the Distribution Reserve based upon the amount sufficient to make a Pro Rata distribution using the Face Amount of such Claim. The LLC Manager shall deposit or invest the funds in the Distribution Reserve in accordance with the provisions set forth in section 345 of the Bankruptcy Code. The holders of Allowed Claims for which a Distribution Reserve has been established shall receive a Pro Rata distribution of the interest actually earned on account of such holder's Allowed Claim.

After any Disputed Claim becomes an Allowed Claim, and to the extent the LLC Manager has previously made distributions, the LLC Manager shall, on the next Periodic Distribution Date, pay to the holder thereof the Pro Rata amount of its Claim as Allowed (or, if less, the amount thereof estimated in accordance with the immediately preceding subparagraph). In accordance with section 502(j) of the Bankruptcy Code, if any proceeds remain in the Distribution Reserve after objections

to Disputed Claims have been resolved, such remaining amounts shall be distributed as soon as practicable in accordance with the provisions regarding the distribution of Distribution Proceeds to the holders of LLC Membership Interests.

The LLC Manager may, with Bankruptcy Court approval, and upon notice to affected parties, make other adjustments as it determines appropriate in the amount held in the Distribution Reserve, and shall distribute, in accordance with this Plan's provisions, all amounts that become available for distribution as a result of the allowance or disallowance of Disputed Claims.

## C. Claims Resolution

After the Effective Date, the VFI LLC may settle, without Bankruptcy Court approval (except as set forth below), any Disputed Claim in accordance with the procedure set forth in this Article V.C.

### 1. *Settlement*

The LLC Manager may settle any Disputed Claim, *provided, however*, that any settlement resulting in a claim in an amount of $1,000,000 or more upon allowance shall be approved by either (a) a majority of the Managing Board, or (b) the Bankruptcy Court.

### 2. *Other Provisions*

The LLC Manager and the Managing Board may agree to any other appropriate procedures to facilitate the timely and reasonable resolution of Disputed Claims after the Effective Date.

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumed Contracts and Leases

Except as provided in any order of the Bankruptcy Court, all executory contracts and unexpired leases in effect on the Confirmation Date will be deemed to be rejected and the Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, other than the contracts and leases to be identified in the Plan Supplement as executory contracts or unexpired leases to be assumed, if any, which shall be assumed under this Plan.

### B. Payments Related to Assumption of Contracts and Leases

Any monetary amounts by which any executory contract and unexpired lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor party to the contract or lease or its assignee, by Cure. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of any Debtor (or any assignee) to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

### C. Bar to Rejection Damages

The Debtors will request that the Confirmation Order establish the 45th day after the date of entry of the Confirmation Order as the deadline for filing any Claim arising from the rejection of an executory contract or unexpired lease under this Plan for which a deadline has not already been set. Any Claim not filed by the deadline set by the Bankruptcy Court shall be deemed waived and forever barred.

# ARTICLE VIII.

## ACCEPTANCE OR REJECTION OF THE PLAN

### A. Classes Entitled To Vote

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan is entitled to vote to accept or reject the Plan. By operation of law, each unimpaired Class of Claims or Interests is deemed to have accepted the Plan and, therefore, is not entitled to vote. Because holders of Claims in Classes that are not entitled to receive or retain any property under the Plan are presumed to have rejected the Plan, they are not entitled to vote.

### B. Acceptance by Impaired Classes

An impaired Class of Claims shall have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept the Plan, in each case not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.

### C. Elimination of Classes

Any Class that does not contain any Allowed Claims or Interests or any Claims or Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

### D. Cramdown

The Debtors hereby request that, to the extent necessary, the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

# ARTICLE IX.

## CONDITIONS PRECEDENT TO THE PLAN'S
## CONFIRMATION AND CONSUMMATION

### A. Conditions to Confirmation

The Plan's Confirmation is subject to the satisfaction or due waiver of the following conditions precedent:

1.  The proposed Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, PFC, and the Creditors' Committee and shall include provisions in form and substance reasonably satisfactory to PFC that provide that the issuance by Pinnacle of the Warrants and the securities purchasable upon exercise of the Warrants, and the distribution by Pinnacle of the Warrants and the securities purchasable upon the exercise of the Warrants, shall be exempt from the registration requirements of the Securities Act of 1933, as amended, and any state or local laws requiring registration, pursuant to section 1145 of the Bankruptcy Code, and that Pinnacle, as the issuer of the Warrants and securities purchasable upon the exercise of the Warrants, and its officers, directors, employees, attorneys and agents are entitled to the protections set forth in section 1125(e) of the Bankruptcy Code.

2.  The Confirmation Order shall provide that the issuance and distribution of the LLC Membership Interests shall be exempt from the registration requirements of the Securities Act and any similar state or local laws, pursuant to section 1145 of the Bankruptcy Code.

### B. Conditions to Effective Date

Effectiveness of the Plan is subject to the satisfaction or due waiver of each of the following conditions precedent:

1.  The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee.

2.  The Confirmation Order shall have become a Final Order.

3.  The VFI LLC Members' Agreement, in form reasonably satisfactory to the Debtors and the Creditors' Committee shall have been executed and delivered and all conditions precedent thereto shall have been satisfied.

## C. Waiver of Conditions

The conditions set forth in the Plan can be waived in whole or in part by the Debtors and the Creditors' Committee, acting jointly, at any time without an order of the Bankruptcy Court, other than the condition set forth in Article IX.A.1 herein, which may only be waived by Pinnacle.

## ARTICLE X.

## MODIFICATION; WITHDRAWAL

The Debtors, with the consent of the Creditors' Committee, reserve the right to modify the Plan either before or after Confirmation to the fullest extent permitted under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, including but not limited to modifications necessary to obtain any no-action letters. The Debtors may withdraw the Plan at any time before the Confirmation Date, or thereafter prior to the Effective Date with the consent of the Creditors' Committee.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction (unless otherwise specified below) over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

A.  Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest;

B.  Hear and determine all Professional Fee Claims and other Administrative Claims;

C.  Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation of any Claims arising therefrom;

D.  Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

E.  Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

F.  Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

G. Hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

H. Issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

I. Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

J. Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

K. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

L. Recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

M. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

N. Hear and determine all matters related to (a) the property of the Estate(s) from and after the Confirmation Date, (b) the winding up of the Debtors' affairs, and (c) the activities of the LLC Manager and VFI LLC, including but not limited to (i) challenges to or approvals of the LLC Manager's activities, (ii) resignation, incapacity or removal of the LLC Manager and selection of a successor LLC Manager, (iii) reporting by, termination of, and accounting of the LLC Manager, (iv) claims against the LLC Manager or any member of the Managing Board, and (v) release of the LLC Manager from its duties;

O. Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

P. Enter a final decree closing the Chapter 11 Cases.

In addition, the Bankruptcy Court shall retain original, but not exclusive, jurisdiction over the prosecution of all Causes of Action. Neither confirmation of the Plan nor entry of the Confirmation Order shall expand or limit the original jurisdiction of the Bankruptcy Court as such jurisdiction exists as of the Confirmation Date with respect to Causes of Action, and neither event shall be deemed to constitute a consent to jurisdiction by any party-in-interest.

## ARTICLE XII.

## EFFECTS OF CONFIRMATION

### A. Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims and Interests, and their respective successors and assigns.

### B. Exculpation and Limitation of Liability

Neither the Debtors nor the Creditors' Committee nor any of their respective present or former members, officers, or directors, shall have or incur any liability to any holder of a Claim or an Interest for any act or omission in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, the pursuit of confirmation of the Plan, or the consummation of the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. For the avoidance of doubt, the provisions of the previous sentence have no application with respect to any act or omission, transaction or

occurrence, based upon any act or occurrence or failure to act taking place or occurring before the Petition Date; nor does this provision impair in any way the ability of any entity to assert counterclaims or rights of offset. "Officers and directors of each of the Debtors" shall mean officers and directors who have served in such capacities between the Petition Date and the Confirmation Date.

Nothing contained in this Article XII.B or elsewhere in the Plan (including, without limitation, Articles XII.C and XII.D) or the Confirmation Order shall be deemed to discharge, enjoin, restrict or otherwise impair any rights that may exist in favor of the holder of any Claim to setoff such Claim against any Causes of Action that may be asserted before, on or after the Effective Date against such holder by any Debtor or successor in interest to a Debtor (including, without limitation, the VFI LLC).

Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtors, the Estate(s), the Creditors' Committee, or any of their respective present or former members, officers, or directors, for any act or omission in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, the pursuit of confirmation of the Plan, or consummation of the Plan, except for their willful misconduct or gross negligence.

### C. Post-Petition Indemnification Obligations

Post-petition indemnification obligations of the Debtors to officers and directors of the Debtors that served in such capacities post-petition, in connection with any acts taken or not taken by such officers and directors during the post-petition period, shall survive the Effective Date and any administrative bar date until the final distribution is made by the VFI LLC; provided, however, the LLC Manager shall provide at least thirty days' written notice to each such indemnitee of the final distribution date. The VFI LLC shall be deemed to have assumed all such post-petition indemnification obligations. Nothing contained in this section should be construed to create any right to indemnification that did not already exist by agreement or otherwise.

### D. Subordination Agreements

Contractual subordination rights that may be applicable to Class 2 and Class 5 Claims are not altered or impaired under the Plan.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

### A. Bar Date for Administrative, Professional Fee and Substantial Contribution Claims

The Confirmation Order will establish the Administrative Claims Bar Date for filing proofs of Administrative Claim, including Substantial Contribution Claims, Professional Fee Claims, and Claims based on the expenses of individual members of the Creditors' Committee. Administrative Claims not filed on or before the Administrative Claims Bar Date will be deemed waived and forever barred. The notice of Confirmation delivered under Bankruptcy Rule 3020(c) and 2002(f) will include and constitute notice of the Administrative Claims Bar Date.

### B. Rights of PFC under Pinnacle Asset Purchase Agreement Not Affected

Nothing in this Plan, the Disclosure Statement, or the Confirmation Order, or any other document or order entered in connection with the Plan shall affect the terms and conditions of the Sale Order or the Pinnacle Asset Purchase Agreement, including all exhibits and amendments thereto to the extent that any such exhibits or amendments entered after closing of the Pinnacle Asset Purchase Agreement are approved by Final Order of the Bankruptcy Court.

## C. Payment of Statutory Fees

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases shall be paid from funds otherwise available for distribution hereunder.

## D. Severability of Plan Provisions

If, before Confirmation, the Bankruptcy Court holds that any provision of the Plan is invalid, void or unenforceable, the Debtors, at their option, with the consent of the Creditors' Committee, may amend or modify the Plan to correct the defect, by amending or deleting the offending provision or otherwise, or may withdraw the Plan. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been amended or modified in accordance with the foregoing, is valid and enforceable.

## E. Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

## F. Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases by virtue of section 105 of the Bankruptcy Code or any order of the Bankruptcy Court shall remain in full force and effect until the LLC Manager has made all distributions contemplated by this Plan, the Debtors have been dissolved, and the Bankruptcy Court has entered an order closing the Chapter 11 Cases. All injunctions or stays in effect in the Chapter 11 Cases by virtue or Section 362 of the Bankruptcy Code shall terminate in accordance with Section 362(c) of the Bankruptcy Code. Notwithstanding the foregoing, all injunctions set forth in the Sale Order shall remain in full force and effect in accordance with their terms.

## G. Committees

On the Effective Date, the duties of the Creditors' Committee shall terminate and the members and professionals thereof shall be released and discharged from all duties arising from or related to the Chapter 11 Cases.

## H. Plan Supplement

Any and all exhibits, lists, or schedules referred to herein but not filed with the Plan shall be contained in the Plan Supplement that will be filed with the Clerk of the Bankruptcy Court before the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtors.

## I. Notices to Debtors

Any notice, request, or demand required or permitted to be made or provided to or upon a Debtor under the Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

VF BRANDS INC.
Six Executive Campus
Cherry Hill, New Jersey 08002
Tax ID No. 51-0381287
Attn: David Pauker
Telephone: (856) 969-7100
Facsimile: (856) 969-7144

with copies to:

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6552
Attn: Sally McDonald Henry
        Frederick D. Morris
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

        -and-

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Attn: Anthony W. Clark
        Robert A. Weber
Telephone: (302) 651-3000
Facsimile: (302) 651-3001

## J. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of Delaware shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

Dated: Wilmington, Delaware
November __, 2001

VF BRANDS, INC.
VLASIC FOODS INTERNATIONAL INC.
ALIGAR, INC.
CARGAL, INC.
VLASIC FOODS DISTRIBUTION
  COMPANY
VLASIC STANDARDS, INC.
VLASIC INTERNATIONAL BRANDS INC.
VLASIC INTERNATIONAL SALES INC.

Debtors and Debtors-in-Possession

By:_____
   David Pauker

By:_____
   Joseph Adler

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Attorneys for VF Brands, Inc., *et al.*,
Debtors-in-Possession

By: _____
   Sally McDonald Henry
   Frederick D. Morris
   Four Times Square
   New York, New York  10036-6522
   (212) 735-3000

    -and-

By: _____
   Anthony W. Clark (I.D. No. 2051)
   Robert A. Weber (I.D. No. 4013)
   P.O. Box 636
   One Rodney Square
   Wilmington, Delaware 19899
   (302) 651-3000

# EXHIBIT B

--------------------------------------------------x
                               :

In re                         : Chapter 11

                               :

VF BRANDS, INC., et al.,       : Case No. 01-00285 (MFW)

                               :

             Debtors.      : Jointly Administered

                               :

--------------------------------------------------x

### NOTICE OF (i) ENTRY OF ORDER CONFIRMING SECOND AMENDED JOINT PLAN OF DISTRIBUTION OF VF BRANDS, INC. AND AFFILIATES , (ii) ADMINISTRATIVE CLAIMS BAR DATE, (iii) PROFESSIONAL FEES BAR DATE, AND (iv) REJECTION DAMAGES CLAIMS BAR DATE

PLEASE TAKE NOTICE that on November __, 2001, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered its Findings Of Fact, Conclusions Of Law, And Order Under 11 U.S.C. §§ 1129 Confirming Second Amended Joint Plan Of Distribution Of VF Brands, Inc. And Affiliates (the "Confirmation Order") (unless otherwise defined, capitalized terms used in this Notice shall have the meanings ascribed to them in the Second Amended Joint Plan Of Distribution Of VF Brands, Inc. And Affiliates (the "Plan")).

PLEASE TAKE FURTHER NOTICE that the Confirmation Order is available for inspection at the office of the Clerk of the Bankruptcy Court at the United States Bankruptcy Court, 824 Market Street, Wilmington, Delaware, 19801.

### SUBSTANTIAL CONTRIBUTION AND SUPPLEMENTAL ADMINISTRATIVE CLAIMS BAR DATE

PLEASE TAKE FURTHER NOTICE that in accordance with Paragraph T of the Confirmation Order, except as otherwise provided therein, the Administrative Claims Bar Date for the filing of Administrative Claims, including Professional Fee Claims based on the expenses of individual members of the Creditors' Committee, or any other claims under section 503 of the Bankruptcy Code, shall be the first Business Day that is at least 90 days after the Effective Date for Professional Fee Claims, and 45 days after the Effective Date for all other Administrative Claims.

Holders of asserted Administrative Claims not paid prior to the Confirmation Date must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. VFI LLC and any other party in interest shall have 25 days (or such other

period allowed by the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims and Substantial Contribution Claims.

## PROFESSIONAL FEES BAR DATE

PLEASE TAKE FURTHER NOTICE that in accordance with Paragraph U of the Confirmation Order, within 15 days after the Confirmation Date, each Professional shall provide the Debtors, the Committee, and the proposed LLC Manager, with a non-binding estimate of the fees and expenses that such Professional will seek compensation for through the Effective Date. Each professional retained in these Chapter 11 Cases shall serve and file its final fee application no later than the first Business Day that is at least 90 days after the Effective Date of the Plan, unless otherwise extended by the Court. Any objection to a Professional Fee claim filed after the Confirmation Date shall be served on the LLC Manager, its counsel, and the Professional to whose claim the objection relates no later than 25 days after the last date to file a Professional Fee Claim. The LLC Manager will pay each Professional Fee Claim within ten days after this Court's order granting the application is entered.

## REJECTION DAMAGES CLAIMS BAR DATE

PLEASE TAKE FURTHER NOTICE that in accordance with Paragraph 19 of the Confirmation Order and in accordance with the Plan, any Claim resulting from the rejection of an executory contract or unexpired lease which is not already the subject of a timely filed proof of claim must be filed with the Clerk of the Bankruptcy Court and served upon VFI LLC within 45 days after the date of entry of the Confirmation Order. Any Claim not filed by the deadline will be deemed waived and forever barred.

Dated:  Wilmington, Delaware
_____, 2001

BY ORDER OF THE BANKRUPTCY COURT
Honorable Mary F. Walrath
United States Bankruptcy Judge

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Counsel to the Debtors

Sally McDonald Henry                         Anthony W. Clark  (I.D. No. 2051)
Frederick D. Morris                          Robert A. Weber (I.D. 4013)
Four Times Square                            One Rodney Square
New York, New York 10036                     Wilmington, Delaware 19899
(212) 735-3000                               (302) 651-3000

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                            :
In re                                       :·    Chapter 11
                                            :
VF BRANDS, INC., et al.,                    :    Case No. 01-00285 through 01-
                                            :    00292 (MFW)
                                            :
              Debtors.                      :    Jointly Administered
                                            :    Related to: Docket No. 687
- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
```

## STIPULATION AND ORDER
## WITH RESPECT TO USE OF, AND LIMITED
## RELEASE OF LIENS WITH RESPECT TO, COLLATERAL

Whereas, on September 26, 2001, the Debtors filed a motion (i) to

estimate the liquidated and unliquidated secured claims of the Bank Group and the

DF Participants, and (ii) to establish reserves in the estimated amount of such

liquidated and unliquidated claims, including a reserve for the payment to the

Bank Group of default interest, Docket No. 687 (the **"Reserve Motion"**);[1]

---

[1]Terms not otherwise defined herein have the meanings assigned to them in the Disclosure
Statement with Respect to Second Amended Joint Plan of Distribution of VF Brands, Inc. and
Certain Affiliates, dated September 24, 2001. The Bank Group includes the lenders, the
Administrative Agent and the Collateral Agent, as set forth in the Disclosure Statement, as well as
each Indemnitee, as set forth in the amended proof of claim of Morgan Guaranty Trust Company
of New York, as Administrative Agent, dated July 25, 2001.

Whereas the Collateral Agent under the Senior Credit Facility (the "**Collateral Agent**") asserts a security interest in substantially all of the Debtors' assets (the "**Prepetition Collateral**"), as collateral for obligations owing the Bank Group and the DF Participants;

Whereas the Bank Group and the DF Participants objected to the Reserve Motion as improper, unnecessary and illegal; and

Whereas the Official Committee of Unsecured Creditors (the "**Committee**") supported the Reserve Motion to the extent it sought to conduct a pre-confirmation estimation, and advocated estimating the unliquidated and disputed secured indemnification claims of the Bank Group and the DF Participants at zero, and the liquidated claims, including the Bank Group claim for default interest, at less than $2.5 million;

The Debtors, the Bank Group, the DF Participants and the Committee (collectively, the "**Parties**") have agreed to the following resolution of the Reserve Motion, provided that the terms of the agreement are so ordered at, or prior to, confirmation of the Plan, and to the extent necessary the Plan will be deemed amended to reflect this Stipulation and Order. The Parties agree as follows:

1.      *Reserve Accounts.* Upon the occurrence of the Effective Date, the LLC Manager shall establish the "**Interest Account**" for the benefit of the Bank Group and the "**Evergreen Account**"and the "**Special Account**" for the benefit of the Bank Group and the DF Participants (all three accounts together, the "**Reserve**

2

Accounts"). Pursuant to and subject to the terms of this Stipulation and Order, as given effect by the Plan to the extent necessary, the LLC Manager shall maintain the Interest Account for the benefit of the Bank Group and the Evergreen Account and the Special Account for the benefit of the Bank Group and the DF Participants to provide adequate protection for the payment of the claims of the Bank Group and the DF Participants as set forth in their respective proofs of claim (the "**Bank Group Claims**" and the "**DF Participant Claims**", respectively) until and to the extent such claims (including any such claims that are unliquidated or contingent) become Allowed Secured Claims and are paid in full or have been disallowed by a final nonappealable order, subject to the LLC Manager's rights under Paragraph 4(a) hereof. Amounts in the Reserve Accounts shall be invested by the LLC Manager in accordance with Section 345 of the Bankruptcy Code in instruments customary for such accounts and that are reasonably acceptable to the Administrative Agent under the Senior Credit Facility (the "**Administrative Agent**"). The Bank Group, through and in the name of the Collateral Agent, shall have a first-priority security interest in the Reserve Accounts and all amounts therein (together with the Foreign Collateral referred to in Paragraph 1(c) hereof, the "**Collateral**"). The DF Participants claim certain secured rights under the DF Participant Compensation Letter. The DF Participants shall be entitled to the benefits of the first-priority security interest in the Evergreen Account, the Special Account, all amounts therein, and the Foreign Collateral only to the extent of any secured rights the DF Participants now have with respect to the Prepetition

3

Collateral. The Parties agree that the liens of the Bank Group and the DF Participants are replacement liens and that their validity or amount is no greater than any existing liens on the Prepetition Collateral. As between the Bank Group and the DF Participants, the rights to such Collateral will be governed in accordance with Paragraph 5 hereof.

(a) *Evergreen Account.* Upon the Effective Date, the Debtors shall fund the Evergreen Account with $5 million of Prepetition Collateral currently held by the Debtors. Amounts in the Evergreen Account shall be used for the monthly payment of the Bank Group Claims and the DF Participant Claims as they accrue, but shall not be applied to interest payments to be satisfied from the Interest Account. Withdrawals from the Evergreen Account shall be replenished to the extent of amounts then available in the Special Account, and, if then unavailable, upon amounts in the Special Account becoming available. Withdrawals from the Evergreen Account by the Bank Group and the DF Participants shall only be permitted until the Bank Claims or the DF Participant Claims, respectively, are either paid in full as Allowed Secured Claims or disallowed.

(b) *Interest Account.* Upon the Effective Date, the Debtors shall fund the Interest Account with $2.5 million of the Prepetition Collateral currently held by Debtors. Upon the entry of a final nonappealable order (the "**Interest Order**") allowing or disallowing the Bank Group's claim for unpaid default interest under Section 2.07(d) of the Senior Credit Facility, amounts in the Interest Account shall be paid to the Administrative Agent for the account of the Bank Group to the extent necessary to give effect to such order. Thereafter, pursuant to the Interest

4

Order, the lien of the Bank Group on the Collateral consisting of the Interest Account and any amounts remaining therein shall immediately and automatically be released.

(c) *Special Account*. The net proceeds of the sales of Freshbake, SonA and VFCI (which the Debtors anticipate to total approximately $25 million) have not yet been distributed to the Debtors. The Debtors have represented that, in their reasonable judgment based on the best information available, they expect a significant amount of such proceeds to be distributed to VFI LLC in the first quarter of 2002, and the balance in the third or fourth quarter of 2002, at which times the proceeds will be available to fund the Evergreen Account, as required. Upon the Effective Date, the rights of the Debtors to receive such net proceeds, and upon receipt, the net proceeds, shall constitute Collateral (without regard to whether or to what extent the Bank Group and the DF Participants had a valid, perfected first priority unavoidable lien on such proceeds or the underlying assets as part of the Prepetition Collateral). The Parties agree that this lien is a replacement lien and that its validity or amount is no greater than any existing lien of the Bank Group and the DF Participants on the Prepetition Collateral. Upon their distribution to the Debtors or to VFI LLC, as applicable, such proceeds shall be deposited in the Special Account. The Special Account and all such proceeds (regardless of whether they have been so distributed or deposited) are together referred to herein as the "**Foreign Collateral**".

2. *Release of Collateral*. Upon the Effective Date and the funding of the Reserve Accounts, the Collateral Agent, the Bank Group and the DF

5

Participants shall be deemed to have released the Prepetition Collateral (including certain funds that constitute Prepetition Collateral and that are held in escrow by the Collateral Agent in Account # 522067518) except the Reserve Accounts, the amounts therein and the Foreign Collateral. In order to effectuate the release of the Prepetition Collateral, except the Reserve Accounts, the amounts therein and the Foreign Collateral, the Collateral Agent under the Senior Credit Facility and the DF Participants will, at the expense of VFI LLC, execute and deliver to the LLC Manager such documents as the LLC Manager shall reasonably request to evidence such release of Prepetition Collateral. Upon the Effective Date and the funding of the Reserve Accounts, the Bank Group, through and in the name of the Collateral Agent, shall have and retain a first priority security interest in the Collateral, and such security interest shall be confirmed by the entry of this Stipulation and Order and the Confirmation Order. Subject to Paragraph 5 hereof, the DF Participants will also be entitled to the benefits of the first priority security interest in the Evergreen Account and the Special Account, amounts therein and amounts to be deposited therein, and such security interest shall be confirmed by the entry of this Stipulation and Order and the Confirmation Order; *provided, however*, that such security shall not be any greater than any secured rights the DF Participants now have with respect to the Prepetition Collateral, and, as between the Bank Group and the DF Participants the rights to such Collateral will be governed in accordance with Paragraph 5 hereof. Neither the Bank Group, the Collateral Agent nor the DF Participants shall be required to file or record financing statements, mortgages, notices of lien or similar instruments in any

6

jurisdiction or take any other action in order to validate and perfect the security interests and liens granted to them pursuant to this Stipulation and Order. If the Bank Group, in their sole discretion, chooses to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such security interests and liens, the liens and security interests granted herein shall be deemed perfected at the time of and on the Effective Date. Upon the request of the Administrative Agent, the Debtors are authorized, without the further consent of any party, to take any actions and to execute and deliver such instruments (in each case without representation or warranty of any kind) as may be necessary to enable the Administrative Agent to further perfect, preserve and enforce the security interests and liens granted the Bank Group and the DF Participants pursuant to this Stipulation and Order.

3. *Gatekeeper.* Upon the Effective Date, the LLC Manager, the Administrative Agent, and the DF Participants shall appoint, jointly, an administrator mutually acceptable to them (the "**Gatekeeper**") who will review the appropriateness of withdrawals from the Evergreen Account. The Gatekeeper shall apply the standards of Section 506(b) of the Bankruptcy Code when conducting its review, and administer withdrawals from the Evergreen Account consistent with Section 506(b) and the terms of Master Loan Participation Agreement and the DF Participant Compensation Letter referenced in Paragraph 5 hereof. The responsibilities and compensation of such Gatekeeper shall be set forth in an engagement letter to be entered into by such Gatekeeper, the LLC Manager or the Committee, the Administrative Agent, and the DF Participants

7

prior to the Effective Date. The Gatekeeper shall be compensated by the LLC Manager from funds other than those in the Reserve Accounts. The LLC Manager, the Administrative Agent and the DF Participants may seek review by the Bankruptcy Court of amounts paid from the Evergreen Account. Nothing herein is intended to modify, increase or decrease the Bank Group Claims or the DF Participant Claims or the alleged rights on which those claims are based.

4. *Retention of Rights.* (a) The LLC Manager shall have the right after the Effective Date to move to estimate the claims of the Bank Group or the DF Participants for purposes of modifying the Evergreen Account and/or the Special Account or releasing all or part of the Collateral from the senior secured liens of the Bank Group and the secured rights, if any, of the DF Participants. The Bank Group or the DF Participants shall have the right to object to such motion on any grounds.

(b) The Administrative Agent and the DF Participants shall agree not to file any objection to the confirmation of the Plan in the absence of material changes in the Plan that adversely affect the Bank Group or the DF Participants, as determined by the Administrative Agent or the DF Participants, respectively.

(c) Without prejudice to Paragraphs 1(c) and 2 hereof, nothing herein is intended to affect or change the claims resolution process or limit or expand any right of the LLC Manager to file objections or adversary proceedings concerning the Bank Group Claims or the DF Participant Claims, or to contest asserted liens or the secured status of the Bank Group or the DF Participants.

8

(d) To the extent the Bank Group Claims and the DF Participant Claims are paid by the Gatekeeper, and those claims are subsequently disallowed by a final nonappealable order, the moneys received by the Bank Group or the DF Participants are subject to the clawback provisions of the Pay Down Order.

5.    *DF Participants.* As between the Bank Group and the DF Participants, rights to the Collateral and the use of amounts in the Reserve Accounts shall be governed by (a) the Master Loan Participation Agreement dated as of August 2, 2000, among the DF Participants, the Participating Banks party thereto and the Administrative Agent and (b) the DF Participant Compensation Letter.

6.    *Modification of Plan.* The Plan shall be deemed modified to reflect the provisions of this Stipulation and Order.

Agreed:

John Fouhey, Esquire
Karen E. Wagner, Esquire
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017-3911
(212) 450-4000

-and-

By: _Mark D. Collins /flo by please_

Mark D. Collins (I.D. No.2981)
John H. Knight (I.D. No.3848)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square North
P.O. Box 551
Wilmington, Delaware  19899-0551
(302) 615-6541

Attorneys for the Administrative Agent

Sally McDonald Henry, Esquire
Frederick D. Morris, Esquire
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

- and -

By: _[signature]_

Anthony W. Clark (I.D. No. 2051)
Robert A. Weber (I.D. No. 4013)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Attorneys for Debtors and Debtors-in-
Possession

By: _Michael Lastowski / Robert Weber [signature]_

Michael R. Lastowski (I.D. No. 3892
William Harrington (I.D. No. 4051)
DUANE, MORRIS & HECKSCHER LLP
1100 North Market Street, Suite1200
Wilmington, DE 19801
(302) 657-4900

-and-

Robert Schmidt, Esquire
Charlotte M. Fischman, Esquire
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
919 Third Avenue
New York, New York, 10022
(212) 715-9100

Co-Counsel to the Official Committee of
Unsecured Creditors

Glenn E. Siegel, Esquire
DECHERT
30 Rockefeller Plaza
New York, New York 10112
(212) 698-3500

-and-

By: _Michael L. Vild / Robert Weber [signature]_

Michael L. Vild (#3042)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

Co-Counsel for the DF Participants

11

The foregoing Stipulation is hereby SO ORDERED on this 23<sup>d</sup> day of

October, 2001.

_____
HONORABLE JUDGE WALRATH
UNITED STATES BANKRUPTCY JUDGE